# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00812-CV

**Philip Jasek and Lorine Jasek, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. C2007-0117B, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## O P I N I O N

The principal issue presented in this appeal is what constitutes the "actual control" of a child that is required to establish standing to bring a suit affecting the parent-child relationship (SAPCR) under family code section 102.003(a)(9). *See* Tex. Fam. Code Ann. § 102.003(a)(9) (West 2008). Appellants Philip and Lorine Jasek[1] assert that they had "actual control" of the two children affected by this case where appellee, the Texas Department of Family and Protective Services (DFPS), placed the children with the Jaseks and the children lived with the Jaseks for more than two years thereafter. DFPS argues that "actual control" turns on whether one has the legal right of control over the children, and the district court was persuaded to render an order predicated on that conclusion. We disagree with that conclusion, hold that the Jaseks satisfied the "actual control" requirement as a matter of law, and will reverse and remand.

---

[1] Pronounced "Ya-shek."

## BACKGROUND

The material facts are undisputed. In February 2007, DFPS filed a SAPCR against the biological parents of two children, K.E. and T.E., seeking to terminate the parent-child relationship. The district court issued an order of termination in January 2008 and named DFPS as K.E. and T.E.'s sole managing conservator.

In April 2007, two months after filing the termination proceeding, DFPS had placed K.E. and T.E. with the Jaseks, who were friends of the children's family according to the record. The placement was made pursuant to a DFPS "Placement Authorization" agreement that required the Jaseks to "provide for the child[ren's] daily care, protection, control, and reasonable discipline," "enroll them in public school," and "provide routine transportation." The placement authorization did not allow the Jaseks to travel with the children outside of Texas or for longer than seventy-two hours without first notifying DFPS, and it required the Jaseks to "give DFPS access to information about the child[ren] at all times." It also advised that "DFPS, at its sole discretion, may remove the child[ren] from the care giver at any time, subject to applicable court orders."

In October 2009, Philip Jasek tested positive for marijuana. Not long thereafter, DFPS removed the children from the Jaseks' home. Before that positive drug test, both the DFPS and the Jaseks had intended to have K.E. and T.E. stay with the Jaseks permanently.

Two months later, the Jaseks filed what they styled as a "Petition in Intervention in Suit Affecting the Parent-Child Relationship" in the same cause number as the termination proceedings that had concluded in January 2008. DFPS filed a motion to strike, asserting that the Jaseks lacked standing to intervene in the termination proceeding or to file an original SAPCR

2

regarding K.E. and T.E. After a hearing on the motion to strike, at which evidence was introduced, the district court found that—

- K.E. and T.E. had lived with the Jaseks between April 2007 and October 13, 2009;

- the Jaseks were "Fictive Kin, not a parent, foster parent, or otherwise" to the children;

- the "[p]arental rights to K.E. and T.E. were terminated on January 10, 2008";

- DFPS had removed K.E. and T.E. from the Jaseks' home on October 13, 2009 as a result of Philip Jasek's positive marijuana test; and

- the Jaseks had filed a "Petition for Intervention in a Suit Affecting Parent-Child Relationship" on December 17, 2009, asserting standing under family code sections 102.004(b), 102.003(a)(9), and 102.005.

However, concluding that the Jaseks lacked standing under section 102.004(b) because their petition was not filed during a pending suit and that they lacked standing under section 102.003(a)(9) because they did not have "control" of the children, the district court granted DFPS's motion and struck the Jaseks' petition. The Jaseks appeal from this judgment.

**DISCUSSION**

In two issues, the Jaseks assert that the district court erred in granting DFPS's motion to strike because (1) they had standing to bring an original SAPCR under family code section 102.003(a)(9) and (2) they had standing to intervene in the termination case under family code section 102.004(b).

3

**Standard of review**

Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). As with other issues implicating subject-matter jurisdiction, analysis of whether a party has standing begins with the plaintiff's live pleadings. *See Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 831 (Tex. App.—Austin 2010, no pet.) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004)). The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 225-26 (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). We must also consider evidence the parties presented below that is relevant to the jurisdictional issues, *Bland Independent School District v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000), including any evidence that a party has presented to negate the existence of facts alleged in the plaintiff's pleading. *See Miranda*, 133 S.W.3d at 227; *see also Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.) (summarizing different standards governing evidentiary challenges to the existence of pleaded jurisdictional facts where such facts implicate both jurisdiction and the merits versus where they implicate only jurisdiction). If the facts relevant to jurisdiction are undisputed, as they are here, the jurisdictional determination is a matter of law. *See Miranda*, 133 S.W.3d at 228; *Combs*, 292 S.W.3d at 719.

"The Texas Legislature has provided a comprehensive statutory framework for standing in the context of suits involving the parent-child relationship." *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2004, no pet.) (citing Tex. Fam. Code Ann. §§ 102.003, .004, .0045,

.005, .006 (West 2008)).  When standing to bring a particular type of lawsuit has been conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party.  *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).  The party seeking relief must allege and establish standing within the parameters of the statutory language.  *In re H.G.*, 267 S.W.3d at 123.

To the extent that the parties' issues turn on the construction of a statute, we review these questions de novo.  *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).  Our primary objective in statutory construction is to give effect to the Legislature's intent.  *See id.*  We seek that intent "first and foremost" in the statutory text.  *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006).  "Where text is clear, text is determinative of that intent."  *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)).  We consider the words in context, not in isolation.  *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).  We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results.  *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004)); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").  We also presume that the Legislature was aware of the background law and acted with reference to it.  *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).  We further presume that the Legislature

5

selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.). Our analysis of the statutory text may also be informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," "consequences of a particular construction," and the enactment's "title." *Id*. § 311.023(1)-(5), (7) (West 2005). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc*., 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

**Standing to intervene under family code section 102.004(b)**

We begin by addressing the Jaseks' second issue, which concerns whether they have standing to intervene in the termination proceeding under family code section 102.004(b). The Jaseks' pleading, which they titled "Petition in Intervention in Suit Affecting the Parent-Child Relationship," asked the district court to name them K.E. and T.E.'s managing conservators. The pleading invokes section 102.004(b) of the family code, which provides as follows:

> [T]he court may grant . . . a person deemed by the court to have had substantial past contact with the child leave to intervene in a *pending suit* filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

6

Tex. Fam. Code Ann. § 102.004(b) (emphasis added). Regardless of whether they are persons who "have had substantial past contact" with K.E. and T.E., the Jaseks cannot establish standing under this provision because there is no "pending suit" in which to intervene.

The district court issued a final order in January 2008 that terminated the biological parents' parental rights and named DFPS as sole managing conservator. *See* Tex. Fam. Code Ann. § 105.006 (West 2008) (establishing requirements for contents of final order). A final order in a SAPCR that purports to dispose of all issues and all parties is a final appealable order. *See State ex. rel. Latty v. Owens*, 907 S.W.2d 484, 485-86 (Tex. 1995) (holding that associate judge's order terminating father's parental rights became final and appealable when father failed to timely appeal to the district court); *Brines v. McIlhaney*, 596 S.W.2d 519, 523-24 (Tex. 1980) (holding that final divorce decree appointing party "temporary" managing conservator "until further order of the court" was a final order). Thus, the termination proceeding, in which a final and appealable order has issued, is no longer "pending."

The Jaseks argue that in a proceeding such as this, where parental rights have been terminated and DFPS was named managing conservator, the case remains "pending" until the subject children have been adopted or become adults. They reason that family code section 263.501(b) requires courts in such cases to conduct periodic placement-review hearings after the entry of the final order of termination:

> If [DFPS] has been named as a child's managing conservator in a final order that terminates a parent's parental rights, the court shall conduct a placement review hearing not later than the 90th day after the date the court renders the final order. The court shall conduct additional placement review hearings at least once every six months until the date the child is adopted or the child becomes an adult.

7

Tex. Fam. Code Ann. § 263.501(b) (West Supp. 2010). We disagree that the existence of this statutory duty means that the SAPCR remains "pending" in the sense that term is used in family code section 102.004(b). Section 263.501(b)'s reference to "a final order" indicates that the court has already decided the termination suit. The proceeding, therefore, is not "pending" by any ordinary definition of that term. This conclusion is further confirmed by the characterization of the subsequent activities as "review hearings," denoting supervision with regard to the results of a proceeding that has already been concluded by the "final order." *Cf. Brines*, 596 S.W.2d at 523-24 (holding that final divorce decree appointing party "temporary" managing conservator "until further order of the court" was final, and noting that "until further order of the court" referred to court's continuing exclusive jurisdiction over the child the subject of the divorce). Accordingly, we hold that section 102.004(b) was not available to the Jaseks here because there was no "pending suit" in which to intervene.

We overrule the Jaseks' second issue.

**Standing to bring original SAPCR under family code section 102.003(a)(9)**

Although the Jaseks have styled their pleading as a "Petition in Intervention" in the SAPCR that was concluded by the 2008 final order, this inaccurate nomenclature is not singularly fatal. Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *See Horizons/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 1999). The Jaseks' petition asked the court to appoint them as K.E. and T.E.'s managing conservators and, in addition to seeking to "intervene," asserted that the Jaseks had "general standing under

8

section 102.003(a)(9) to file an original SAPCR." Section 102.003(a)(9) confers standing to bring an original SAPCR to "person[s], other than a foster parent, who [have] had actual care, control, and possession of the child[ren] for at least six months ending not more than 90 days preceding the date of the filing of the petition." *See* Tex. Fam. Code Ann. § 102.003(a)(9). Thus, by requesting appointment as the children's managing conservators, referencing an original SAPCR—as opposed to an intervention in a pending matter—and invoking a provision governing standing to bring an original SAPCR (and section 102.003(a)(9) specifically), the Jaseks provided DFPS and the district court adequate and fair notice of their intent to bring an original SAPCR under section 102.003(a)(9) to modify K.E. and T.E.'s conservatorship. *See Horizons/CMS Healthcare Corp.*, 34 S.W.3d at 897. "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim" such that "the opposing party has information sufficient to enable him to prepare a defense." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). "A pleading that gives adequate notice will not fail merely because the draftsman named it improperly." *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 586 (Tex. App.—Dallas 1991, writ denied) (citing Tex. R. Civ. P. 71). Further, because the district court had acquired continuing exclusive jurisdiction over K.E. and T.E. as a result of the final order of termination, it would have been proper for the Jaseks to file an original proceeding there. *See* Tex. Fam. Code Ann. § 155.001 (West 2008) (providing that a court who has issued a final order in an earlier SAPCR proceeding has jurisdiction over future SAPCR proceedings involving the same child).

The district court found, and it is undisputed, that the two children lived with the Jaseks for more than two years. Consequently, they would satisfy section 102.003(a)(9)'s

requirements if such care and possession constituted "actual care, control, and possession of the child[ren]," as the district court found they were "person[s], other than a foster parent," the period of care and possession was "at least six months," and the period ended "not more than 90 days preceding the date of the filing of the petition." *See id*. § 102.003(a)(9). DFPS, while acknowledging that the Jaseks cared for and possessed K.E. and T.E. for more than two years within the relevant time period, argues that the Jaseks failed nonetheless to establish standing under section 102.003(a)(9) because they (1) did not properly plead that they had "care, control, and possession" of K.E. and T.E. and (2) could not establish that they had "actual control" over the children because, at all relevant times, DFPS had sole legal control over the children.

### *Pleadings*

As to DFPS's challenge to the Jaseks' pleadings, we note that the Jaseks' petition asserted that "the Jaseks have general standing under section 102.003(a)(9) to file an original SAPCR . . . . Therefore, as a matter of law, the Jaseks satisfy the legal requirements to intervene in this case." As facts in support of their standing, the Jaseks alleged that "[o]n . . . April 10, 2007, [K.E. and T.E.] were placed in the Jasek home where they remained for approximately two-[and-a-half] years before the court removed them on . . . October 13, 2009." Although the Jaseks' petition did not quote the text of section 102.003(a)(9), "actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" is the only basis for standing provided in that section. *See id*. § 102.003(a)(9). Thus, by specifically referring to section 102.003, subsection (a)(9), alleging that the children had lived with them for more than two years ending in October 2009, and filing their petition in December 2009, the

10

Jaseks gave DFPS and the district court adequate and fair notice of their contention that they had exercised "actual care, control, and possession" of K.E. and T.E. sufficient to confer standing under family code section 102.003(a)(9). *See Horizons/CMS Healthcare*, 34 S.W.3d at 897; *Roark*, 633 S.W.2d at 810 ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim" such that "the opposing party has information sufficient to enable him to prepare a defense.").

Further, DFPS did not file special exceptions to the Jaseks' petition. When a party fails to specially except to pleadings, we must construe the pleadings liberally in favor of the pleader. *Horizons/CMS Healthcare*, 34 S.W.3d at 897. "An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment." *Id.* If DFPS had specially excepted to the Jaseks' petition, the Jaseks could have easily amended their petition. Because DFPS failed to do so, however, and because the Jaseks' pleadings gave the DFPS fair notice of their basis for standing to bring this suit, we conclude that the Jaseks have sufficiently pleaded that they had "actual care, control, and possession" of K.E. and T.E.

#### *"Actual control"*

DFPS contends that regardless of whether the Jaseks properly pleaded standing under section 102.003(a)(9), they could not establish that they had the requisite "actual control" over K.E. and T.E. DFPS does not dispute that Jaseks had "actual care" and "actual possession" of the children for the requisite time period. However, it argues that the Jaseks could not have had "actual control" during that time because that requires having the "authority to make legal decisions, decisions of legal significance and including the responsibilities of a legal parent." DFPS insists that only DFPS

11

had "actual control" over the children because, as the district court found, DFPS was vested with the ultimate legal authority to make decisions for the children, including the discretion to remove them from the Jaseks' home at any time. We disagree that "actual control" under section 102.003(a)(9) hinges on whether a care giver possesses this sort of legal authority.

Our analysis begins with the statutory text, which requires that the person asserting standing have had "actual care, control, and possession of the child." We observe that the adjective "actual" in the phrase "actual care, control, and possession" modifies each of the three nouns that follows. Thus, a person asserting standing under section 102.003(a)(9) must show actual care, actual control, and actual possession. Here, because DFPS does not contest care and possession, we are concerned only with "actual control," which the family code does not define.

"Actual" is a commonly used word that means "existing in fact or reality." *Webster's Third New Int'l Dictionary* 22 (2002) (contrasting it with "ideal and hypothetical" and distinguishing it from "apparent and nominal"). In legal contexts, the word "actual" is most often used in juxtaposition with the word "constructive"—i.e., something that exists by virtue of a legal imputation or fiction, but not existing in fact. *See Black's Law Dictionary* 40 (9th ed. 2009) (defining "actual" as "existing in fact; real" and comparing it with "constructive"). For example, in the context of premises-liability cases, the law distinguishes between actual knowledge of a dangerous condition—i.e., when a person directly knows of the dangerous condition, *see Reliable Consultants, Inc. v. Jaquez*, 25 S.W.3d 336, 343 (Tex. App.—Austin 2000, pet. denied) (employee saw customers tripping over step); *see also Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (noting in slip and fall case that Wal-Mart would have actual knowledge if one of its

12

employees had placed a dangerous substance on the floor)—and constructive or imputed knowledge—i.e., what a person does not actually know, but objectively should know or has reason to know, so as to be charged with the same duties that arise from actually knowing it, *see Wal-Mart*, 81 S.W.3d at 814 (noting in slip and fall case that Wal-Mart would have constructive knowledge of danger if the dangerous substance had been on the floor for a sufficient period of time such that Wal-Mart had a reasonable opportunity to discover it). The family code recognizes the same distinction between actual knowledge and constructive knowledge. *See* Tex. Fam. Code Ann. § 34.007 (West Supp. 2010).

Similarly, the law distinguishes between constructive and actual notice. "Actual notice rests on personal information or knowledge . . . . Constructive notice is notice that the law imputes to a person not having personal information or knowledge." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (citations omitted); *see* Tex. Fam. Code Ann. § 3.104 (West 2008) (discussing "actual or constructive notice" regarding spouse's lack of authority over certain property). Likewise, in the discovery context, the rules of civil procedure define "possession, custody, or control of an item" as "physical possession of the item"—i.e., actual possession—or the "right to possession of the item that is equal or superior to the person who has physical possession of the item"—i.e., constructive possession. *See* Tex. R. Civ. P. 192.7(b); *see also GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (distinguishing between constructive and actual possession); *cf.* Tex. Fam. Code Ann. § 34.003 (discussing "actual physical possession").

We need not further belabor the point—the law uses the term "actual" to indicate something that exists in fact, as opposed to something that is a function of legal duties or imputation.

13

And we are to presume that the Legislature was aware of such usage and connotation, and deliberately intended that meaning, when it made "actual" care, control, and possession the basis for standing under family code section 102.003(a)(9). *See State v. Young*, 265 S.W.3d 697, 707 (Tex. App.—Austin 2008, pet. denied); *see also* Tex. Gov't Code Ann. § 311.011(b); *Acker*, 790 S.W.2d at 301; *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied).

As for "control"—a word which the Legislature included in seventy-three provisions of the family code but did not specifically define—it means the "power or authority to guide or manage: directing or restraining domination." *Webster's Third New Int'l Dictionary* 496 (2002); *see Black's Law Dictionary* 378 (9th ed. 2009) (defining control as the "power to govern the management and policies of a person"); *see also American Fid. & Cas. Co. v. Traders & Gen. Ins. Co.*, 334 S.W.2d 772, 775 (Tex. 1960) (defining control as "[p]ower or authority to manage, direct, govern, administer, or oversee"). Accordingly, "actual . . . control . . . of the child," as used in section 102.003(a)(9), means the actual power or authority to guide or manage or the actual directing or restricting of the child, as opposed to legal or constructive power or authority to guide or manage the child. In sum, these words reflect the Legislature's intent to create standing for those who have, over time, developed and maintained a relationship with a child entailing the actual exercise of guidance, governance and direction similar to that typically exercised by parents with their children. *See Coons-Andersen v. Andersen*, 104 S.W.3d 630, 636 (Tex. App.—Dallas 2003, no pet.).

Several courts, including this Court, have previously addressed section 102.003(a)(9)'s requirement that a person have "actual care, control, and possession" of the

14

child to have standing to bring an original SAPCR. But in doing so, most of these courts considered all three elements—care, control, and possession—collectively, without distinguishing them.[2] Some of these cases define or identify the elements only in terms of what they do not mean. *See, e.g.*, *id.* at 634 (holding that "[o]ccasional visitation with or possession of a child . . . is not 'actual care, control, and possession' under the statute"); *In re J.J.J.*, No. 14-08-01015-CV, 2009 WL 4613715, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, no pet.) (noting that assertion that the child had lived with one person "during a particular time period is not necessarily mutually exclusive of the assertion that [another person] had care, control, and possession of the child during that same period"). Others relied on certain specific facts—e.g., living arrangements, financial contributions, nurturing, home modifications, and educational involvement—to determine whether there was "actual care, control, and possession." *See, e.g.*, *In re M.K.S.-V*, 301 S.W.3d 460, 463-65 (Tex. App.—Dallas 2010, pet. denied); *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex. App.—Dallas 2008, no pet.); *Smith v. Hawkins*, No. 01-09-00060-CV, 2010 WL 3718546, at *3 (Tex. App.—Houston [1st Dist.] Sept. 23, 2010, pet. filed) (mem. op.). The common threads running through the cases in which the court found actual care, control, and possession collectively to be established, however, were that the person asserting standing (1) lived in the same home as the child or lived in a home where the child stayed overnight on a regular and frequent basis, (2) made

---

[2] *See, e.g.*, *In re M.K.S.-V*, 301 S.W.3d 460, 463-65 (Tex. App.—Dallas 2010, pet. denied); *Coons-Andersen v. Andersen*, 104 S.W.3d 630, 634 (Tex. App.—Dallas 2003, no pet.); *Williams v. Anderson*, 850 S.W.2d 281, 284 (Tex. App.—Austin 1993, writ denied); *In re Fountain*, No. 01-11-00198-CV, 2011 WL 1755550, at *3-4 (Tex. App.—Houston [1st Dist.] May 2, 2011, no pet.) (mem. op.); *Smith v. Hawkins*, No. 01-09-00060-CV, 2010 WL 3718546, at *3 (Tex. App.—Houston [1st Dist.] Sept. 23, 2010, pet. filed) (mem. op.).

financial contributions benefitting the child, (3) was involved with the child's education, and (4) was involved in matters involving the child's general upbringing, like health care, feeding, and clothing. *See, e.g.*, *In re M.K.S.-V*, 301 S.W.3d at 463-65*; In re M.P.B.*, 257 S.W.3d at 809; *Smith*, 2010 WL 3718546, at *3.

In contrast, we found only two cases that have addressed "actual control" separately in this context. *See In re K.K.C.*, 292 S.W.3d 788, 792-93 (Tex. App.—Beaumont 2009, no pet.); *In re Kelso*, 266 S.W.3d 586, 590 (Tex. App.—Fort Worth 2008, no pet.). Both held that the parties lacked standing because they did not have "actual control" over the children at issue in the cases.

In *In re Kelso*, the court held that a child's paternal grandmother and step-grandfather lacked standing under section 102.003(a)(9) on the basis that the evidence failed to show that the mother had "voluntarily relinquished permanent care, control, and possession of [the child] to the [grandparents] for the six months preceding their filing of the suit." *See In re Kelso*, 266 S.W.3d at 590. The court further held that the evidence showed that the child's mother "controlled where [the child] would stay and for how long and that the [grandparents] did not have such control," and that there was no evidence that the mother had "intended for [the child] to stay with the [grandparents] for any extended periods of time—i.e., "there [was] no evidence that [the child's] abode in [the grandparents' county of residence] was fixed or permanent; rather, the evidence [was] that it was temporary, sometimes up to several months at a time, but always depending on [the mother's] consent."

In *In re K.K.C.*, on which DFPS relies heavily in its brief to this Court, the court of appeals held that an ex-boyfriend of the child's mother, who had previously lived with the mother

and child for approximately seven years, lacked standing under section 102.003(a)(9) to seek appointment as a joint managing conservator of the child. The evidence in the case showed that the ex-boyfriend, in addition to residing in the same home as the child, had attended the child's school functions, been responsible for picking up the child from day care, disciplined the child, generally served as caretaker for the child, provided financial support, and was called "daddy" by the child. The court held that the ex-boyfriend lacked standing because the ex-boyfriend "had no legal right of control over the child and no authority to make decisions on behalf of the child," and because the child's mother had also "lived with the child, adequately cared for the child, and did not relinquish to petitioner or abdicate her parental rights, duties, and responsibilities." *In re K.K.C.*, 292 S.W.3d at 793 (citing *In re Kelso*, 266 S.W.3d at 590-91; *In re M.J.G.*, 248 S.W.3d 753, 757-58 (Tex. App.—Fort Worth 2008, no pet.)). In denying the ex-boyfriend's standing, the court also relied on the "constitutional liberty interests retained by a fit parent adequately caring for her child" and "the statutory scheme for standing set forth in the family code." With regard to the latter, the court specifically referenced family code sections 102.003(a)(11) (frequently referred to as the "step-parent" standing provision), 102.004(a) (providing standing for close relatives of a child under certain circumstances), and 102.004(b) (providing standing to intervene in pending suit to grandparent or "person with substantial past contact with the child"). The court concluded that allowing standing under 102.003(a)(9), when the requirements of the other cited standing provisions had not been met, would "permit an 'end run' around specific restrictions in the [family code]." *Id.* at 795 (citing *In re Derzapf*, 219 S.W.3d 327, 332 (Tex. 2007)); *see* Tex. Fam. Code Ann. §§ 102.003(a)(11), 102.004 (West 2008).

17

To the extent that these two cases construe section 102.003(a)(9) to require that either (1) a parent or conservator have relinquished rights over a child or (2) that the person seeking standing have ultimate legal authority to control a child, we respectfully disagree. First, nothing in section 102.003(a) requires that a parent or other conservator have "voluntarily relinquished permanent care, control, and possession" or that the person seeking standing have legal control over the child. *See* Tex. Fam. Code Ann. § 102.003(a)(9); *see also Smith*, 2010 WL 3718546, at *3 ("Nothing in section 102.003(a)(9) requires that care, custody [sic], control and possession be exclusive."). We cannot add words to a statute; that is solely the Legislature's prerogative. *See Lee v. City of Houston*, 807 S.W.3d 290, 295 (Tex. 1991) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute.").

Second, requiring that the person seeking standing under section 102.003(a)(9) have the ultimate legal right to control a child, in addition to reading words into the text that are not there, would render the word "actual" superfluous at best and meaningless at worst. As discussed, "actual" is used in legal contexts to distinguish between something that exists in fact rather than as a function of legal implication. If the Legislature wanted to tie standing to persons with the legal right to control a child, it would have either omitted the word "actual" or included the word "legal." But by using "actual" to modify "care, control, and possession," the Legislature manifested its intent to confer standing on a person who had developed and maintained a relationship, of at least six months duration, with the child by virtue of that person's actual care, control, and possession of the child, as distinguished from a bare legal right of care, control, and possession.

18

In holding that standing under section 102.003(a)(9) turns on a legal right to make decisions of legal significance for the child and that the child's parent have abdicated parental rights, duties, and responsibilities, the *In re K.K.C.* court relied on *In re M.J.G.*, 248 S.W.3d at 757. *See In re K.K.C.*, 292 S.W.3d at 793. *In re M.J.G.*, however, addressed a challenge to the trial court's finding that the person seeking standing did not have possession of the children in that case for any significant period of time and that the children were not left with that person for a six-month period of time. Although the court "declined to hold that the [person seeking standing] had 'actual care, custody [sic], and control of the children," its holding was based on possession, not control. *See In re M.J.G.*, 248 S.W.3d at 758-59. Accordingly, it does not support *In re K.K.C.*'s holding, nor does it inform our decision here.

As for *In re K.K.C.*'s reliance on *Troxel* and a parent's constitutional "liberty interest in the care, custody, and control of their children," *see In re K.K.C.*, 292 S.W.3d at 792 (quoting *Troxel v. Granville*, 530 U.S. 57 (2000)), we note initially that we are not presented here with a situation in which a parent's constitutional rights are being challenged. Rather, we are faced with a situation where DFPS, a governmental entity that was named the children's sole managing conservator because their biological parents' parental rights were terminated, is attempting to deny standing to the people who performed a parent-like role while the children had lived with them for the past two years. Given these facts, we cannot say that a parent's constitutional interest in the "care, custody, and control" of their child is implicated. *See Troxel*, 53 U.S. at 65.

Regardless, however, *Troxel* involved a standing statute that the Supreme Court determined was "breathtakingly broad" because it allowed "'*[a]ny person* [to] petition the court for

19

visitation rights *at any time*'" and "failed to provide any protection for the parent's fundamental constitutional right to make decisions concerning the rearing of her own [children]." *Id*. at 67-70 (quoting challenged statute) (emphases in original). In contrast to the statute in *Troxel*, section 102.003(a)(9) is narrowly tailored to give standing to only those persons who have exercised "actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Presumably, a person would only be able to meet these requirements, absent violating some other law, with some type of parental or conservator consent, actual or constructive, such as where a parent leaves a child in the care of other people for more than six months. Thus, unlike the statute in *Troxel*, section 102.003(a)(9) does not violate a parent's right to make decisions regarding their children; rather, it imposes potential legal consequences for certain types of parental decisions. *See In re Fountain*, No. 01-11-00198-CV, 2011 WL 1755550, at *5 (Tex. App.—Houston [1st Dist.] May 2, 2011, no pet. h.) (discussing section 102.003(a)(9) in view of Supreme Court's decision in *Troxel*) (mem. op.).

We also differ with *In re K.K.C.*'s reasoning that construing section 102.003(a)(9) to apply to someone who lacks a legal right to control a child would create an "end-run" around the other standing provisions of the family code. *See In re K.K.C.*, 292 S.W.3d at 793-94 (citing *In re Derzapf*, 219 S.W.3d at 332). This contention implies that the family code's standing provisions are mutually exclusive when they are not. *See* Tex. Fam. Code Ann. §§ 102.003 (general standing), .004 (standing for grandparent or certain other relatives), .0045 (sibling standing), .005 (standing for termination and adoption), .006 (limitations on standing), .007 (standing for Title IV-D agency) (West 2008 & Supp. 2010); *see also Coons-Andersen*, 104 S.W.3d at 636

20

("The purpose of section 102.003(a)(9) is to create standing for those who have developed and maintained a relationship with a child over time."); *T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex. App.—San Antonio 1992, no writ)). Further, the supreme court in *In re Derzapf*, to which the *In re K.K.C.* cites for support for this proposition, specifically did not address whether standing existed under section 102.003(a)(9). *See In re Derzapf*, 219 S.W.3d at 332. Instead, the supreme court held that because the trial court had granted access under the family code's grandparent-access provision, *see* Tex. Fam. Code Ann. § 153.433, the grandparent's standing had to be determined under the family code's grandparent-standing provisions, *see id.* § 102.004:

> Regardless of whether [the step-grandparent] satisfied section 102.003(a)(9)'s general standing requirements for filing a SAPCR—an issue we do not reach—the trial court awarded access based on the standards set forth in section 153.433, the grandparent access statute. As set forth above, [the step-grandparent] does not meet the more specific standing requirements to pursue a claim under that section. Concluding that [the step-grandparent seeking standing] had standing under section 102.003(a)(9) when access was granted based on chapter 153 would permit an end run around the requirements of section 153.432(a), a result the Legislature cannot have intended.

*In re Derzapf*, 219 S.W.3d at 332. Accordingly, *In re Derzapf* does not inform our decision here.

Based on the statutory text and the foregoing analysis, we hold that to establish standing under section 102.003(a)(9), the Jaseks had to show that they had actual control over K.E. and T.E.—meaning the actual power or authority to guide or manage K.E. and T.E. without regard to whether they had the legal or constructive power or authority to guide or manage K.E. and T.E—for at least six months ending not more than 90 days preceding the date of the filing of their petition. *See* Tex. Fam. Code Ann. § 102.003(a)(9). The Jaseks' pleadings and the evidence

21

introduced at the hearing on DFPS's motion to dismiss established that they did. Among other facts, the unchallenged pleadings and the undisputed evidence showed:

- K.E. and T.E. lived with the Jaseks continuously between April 2007 and October 13, 2009.

- The Jaseks filed their petition on December 17, 2009.

- The Jaseks were obligated, under the terms of the Placement Authorization, to provide for K.E. and T.E.'s "daily care, protection, control, and reasonable discipline," and to enroll them in school.

- DFPS does not contend that the Jaseks violated the terms of the Placement Authorization.

- The Jaseks provided K.E. and T.E.'s "basic needs for food, shelter, medical care, and therapeutic needs" and "structure, nurturing and therapeutic interventions," as well as offering the girls time for recreational activities.

- The Jaseks provided "the structure, love and support necessary for [K.E. and T.E.] to be successful."

- K.E. and T.E. "are very bonded with Mr. and Mrs. Jasek" and "happy in their home."

- The Jaseks complied with the children's doctors' plan of medical treatment.

- The Jaseks enrolled K.E. and T.E. in school.

- The Jaseks were not the foster parents of K.E. and T.E.

We hold that, as a matter of law, the Jaseks had standing under family code section 102.003(a)(9) to file a suit affecting the parent-child relationship.

Finally, in its brief to this Court, DFPS emphasizes various unflattering facts and accusations regarding the Jaseks, including Philip Jasek's positive marijuana test and alleged instances where the Jaseks subjected K.E. and T.E. to "extreme forms of punishment." While these allegations may prove to be relevant to the district court's ultimate decision on the merits of their

22

petition to modify managing conservatorship, they are not relevant to whether the Legislature has given the Jaseks standing to bring their petition in the first place. Likewise, our holding that the Jaseks have standing to bring a case does not mean or imply that they will ultimately prevail.

We sustain the Jaseks' first issue.

## CONCLUSION

We reverse the district court's judgment striking the Jaseks' petition and remand the case to the district court for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose

Reversed and Remanded

Filed: August 17, 2011