NO. 07-11-00306-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 17, 2012

_____

IN THE INTEREST OF K.K.T. AND K.M.T., CHILDREN

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 63,602-A; HONORABLE JAMES ANDERSON, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant B.T. is the paternal grandfather of K.K.T. and K.M.T.[1]  He challenges the order of the trial court dismissing for lack of standing his suit affecting the parent-child relationship (SAPCR).  Finding no error by the trial court, we will affirm.

Background

K.K.T. was born in 2006, and K.M.T. in 2008.  Their parents are C.B. (the mother) and D.T. (the father).  In a March 2009 order, the mother and father were appointed joint managing conservators of the children and the mother was named as

_____

[1] We identify appellant and the children with initials and identify the parents of the children as the mother and the father to protect the identity of the children.  *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2011) (appellate court may identify parties in opinion by fictitious names or their initials).

the conservator with the exclusive right to designate the primary residence of the children.  B.T. was not a party to the proceeding.

During the times material to the current proceeding, the father was incarcerated with a projected release date of August 2011.  B.T. and the mother live in Amarillo.  The children's maternal grandmother and great-grandmother also live in Amarillo.

B.T. filed the current proceeding in March 2011, seeking to modify the March 2009 order by appointing him as a managing conservator with the right to designate the children's primary residence.  He plead that the mother had voluntarily relinquished actual care, control and possession of the children to him "for at least six months."[2]

The mother answered and moved to dismiss B.T.'s modification action on the ground he lacked standing under Family Code § 102.003(a)(9).[3]  The trial court took up the issue of standing at an evidentiary hearing.

B.T. testified the children and the mother frequently moved.  Between moves the children often stayed with B.T.  "Lots of times," the mother also stayed with the children at B.T.'s home.  According to B.T., the children resided with him between April 1, 2010, and March 10, 2011.  But they also were with the mother at times during this period.  When asked how often B.T. replied, "That changes daily. . . . she'll call you one second

_____

[2] *See* Tex. Fam. Code Ann. § 156.101 (West Supp. 2011) (grounds for modification of order establishing conservatorship).

[3] Tex. Fam. Code Ann. § 102.003(a)(9) (West Supp. 2011).

2

and say she has to have [the children], you'll go rush them to her, and little bit later she'll bring them back to you."

During this period he was incarcerated, the father was permitted to telephone the children at B.T.'s home[4] on Tuesday and Thursday evenings, at about 8:00 p.m. Because of the hour, and as K.K.T. would attend pre-kindergarten the following morning, the children spent Tuesday and Thursday nights with B.T. In addition, each weekend B.T. drove the children to the incarceration facility for a personal visit with the father on Saturday. Apparently the father was moved among facilities. This affected travel time and required that the children sometimes spend Friday and Saturday nights with B.T. The mother testified that on rare occasions the children spent a Sunday with B.T. On cross-examination, B.T. agreed the primary reason the children were with him was to speak and visit with their father. While the children were staying with B.T., he explained, if the mother "decided she wanted [the children] in between, she'd just call and say, hey, bring me the kids" and he would comply.

The mother also testified the children stayed with B.T. to facilitate the telephone calls and personal visits with their father. She agreed she wanted to ensure a continuing relationship between the children and their father, and desired the children to have a relationship with the father's family. The mother agreed also that B.T. was assisting her while she attended school. She took the children to the doctor, registered K.K.T. for school, and took him to school. Various family members, including B.T., the

---

[4] Why telephone calls from the father to K.K.T. and K.M.T. had to be placed to B.T.'s home is not explained by the record.

children's uncle,[5] and the children's maternal great-grandmother, picked K.K.T. up after school, and took K.K.T. to speech therapy. A friend of B.T.'s testified the children were often with B.T., and had been in his home when the friend visited there. The maternal grandmother also testified.

The trial court ruled B.T. lacked standing and dismissed his SAPCR. At the request of B.T., the court issued two findings of fact: "[B.T.] did not have actual 'control' of the children for at least six months," and "[B.T.'s] periods of possession were at [the mother's] permission and at her direction." Citing Family Code § 102.003(a)(9) in a lone conclusion of law, the court concluded B.T. lacked standing to bring the suit. This appeal followed.

Analysis

Through two issues which we discuss jointly, B.T. argues the trial court erred in determining he lacked standing to bring his modification action.

Standing is a necessary component of subject-matter jurisdiction, without which a court lacks authority to hear a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444-45 (Tex. 1993).[6] Standing is simply the right to be heard; it does not mean a party also has a right to prevail. *In re S.S.J.-J.,* 153 S.W.3d 132, 138 (Tex.App.--San Antonio 2004, no pet.). If standing is conferred by statute, we analyze

---

[5] The uncle is the father's brother, B.T.'s son, and lives with B.T.

[6] *But cf. Coastal Oil & Gas Corp. v. Garza Energy Trust,* 268 S.W.3d 1, 9 n.16 (Tex. 2008) ("[t]his Court has not indicated whether standing is always a matter of subject-matter jurisdiction").

4

the standing issue according to the statutory framework. *In re Fountain,* No. 01-11-0198-CV, 2011 Tex. App. Lexis 3327, at \*11 (Tex.App.--Houston [1st Dist.] May 2, 2011) (orig. proceeding) (mem. op. on reh'g.) (citing *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984)). "The party seeking relief must allege and establish standing within the parameters of the language used in the statute." *In re H.G.,* 267 S.W.3d 120, 124 (Tex.App.--San Antonio 2008, pet. denied). We review a trial court's determination of standing *de novo. See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). In so doing, we take the pleadings as true and construe them in favor of the pleader. *Id.* at 226-28. We also consider evidence relevant to the inquiry when necessary. *Id.* at 227.

Among those who can file a suit for modification of an order providing for conservatorship of a child is a person having standing to bring a SAPCR under Family Code Chapter 102 at the time of filing the modification suit. Tex. Fam. Code Ann. § 156.002(b) (West Supp. 2011). For standing to bring the modification action, B.T. relies on one of the categories under the general standing provision, Family Code § 102.003, the category providing that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may file a SAPCR. Tex. Fam. Code Ann. § 102.003(a)(9) (West Supp. 2011).

Whether a party satisfies the standing requirement under § 102.003(a)(9) is necessarily fact-specific and determined on a case-by-case basis. *In re M.P.B.,* 257 S.W.3d 804, 809 (Tex.App.--Dallas 2008, no pet.).

5

In § 102.003(a)(9), the adjective "actual" modifies each of the words in the phrase "care, control, and possession of the child." *Jasek v. Tex. Dep't of Fam. & Protective Svcs.*, 348 S.W.3d 523, 532 (Tex.App.--Austin 2011, no pet.). The phrase "actual control . . . of the child," as used in § 102.003(a)(9), means "the actual power or authority to guide or manage or the actual directing or restricting of the child . . . ." *Id.* at 533. Moreover, if the word "control" in § 102.003(a)(9) is to be given effect, it "must mean something more than the control implicit in having care and possession of the child." *In re K.K.C.*, 292 S.W.3d 788, 792 (Tex.App.--Beaumont 2009, orig. proceeding) (also holding control there refers to the power or authority to guide and manage). The words actual control "reflect the Legislature's intent to create standing for those who have, over time, developed and maintained a relationship with a child entailing the actual exercise of guidance, governance and direction similar to that typically exercised by parents with their children." *Jasek*, 348 S.W.3d at 533.

We agree with the trial court that the pleadings and evidence, even when construed in favor of B.T., fail to show he had the control over the children required for standing.

B.T.'s actual control argument relies on the "common threads" the court in *Jasek* found running through cases finding "actual care, control, and possession *collectively* to be established." 348 S.W.3d at 534 (italics ours). B.T. argues his relationship with the children meets each of the factors the court there identified[7] because the children have

---

[7] The "common threads" listed by the court in *Jasek* included evidence the person asserting standing (1) lived in the same home as the child or lived in a home where the child stayed overnight on a regular and frequent basis, (2) made financial

a bedroom in his home where they regularly and frequently stayed overnight; he drove them to school and daycare at his expense and drove K.K.T. to speech therapy; and he purchased clothing for the children. What is missing from this record, however, is evidence B.T. exercised the "actual power or authority to guide and manage" the children. *See Jasek*, 348 S.W.3d at 537.

The undisputed evidence shows that the father's temporary incarceration played a heavy role in the arrangements for the children's care during the time in question, and shows that maintenance of those arrangements hinged on the mother's will. *Cf. In re Kelso,* 266 S.W.3d 586, 590-91 (Tex.App.--Fort Worth 2008, no pet.) (evidence did not show child's abode with grandparents was fixed or permanent but temporary, always dependent on the mother's consent); *In re Fountain,* 2011 Tex. App. Lexis 3327, at *16 (evidence did not indicate pattern of care and possession was intended to be temporary). The testimony was that the children were with B.T. in his home according to the shared desire of the mother and B.T. to facilitate a relationship with the father and his family. That the children spent much time with their grandfather and often stayed overnight in his home with him and their uncle, and that their grandfather provided transportation for the children to school, daycare and other appointments demonstrate he exercised care and possession of the children. But it does not demonstrate the exercise of authority to guide and manage the children, beyond the control that is implicit in the possession and care of three- and five-year-old children. *In re K.K.C.,* 292

contributions benefitting the child, (3) was involved with the child's education, and (4) was involved in matters involving the child's general upbringing, like health care, feeding, and clothing. 348 S.W.3d at 534.

S.W.3d at 792. Nor does the evidence B.T. bought items of clothing for the children on occasion when he considered the clothing their mother had sent to be inadequate demonstrate the exercise of such authority.

The functional extent of B.T.'s control of the children is aptly summarized in his hearing testimony that the mother will "call you one second and say she has to have [the children], you'll go rush them to her, and little bit later she'll bring them back to you," and B.T.'s acknowledgement that when the mother told him to bring the children home he complied. In sum, while the record shows B.T.'s commendable devotion to his son's children and efforts directed toward maintaining their relationship with their father during his absence, it does not contain evidence B.T. exercised "guidance, governance and direction similar to that typically exercised by parents with their children." *Jasek,* 348 S.W.3d at 533. B.T. did not establish he possessed standing to file suit under § 102.003(a)(9). We affirm the order of the trial court dismissing his modification suit.

James T. Campbell
Justice