

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00090-CV

IN RE SAMANTHA HALE BATTENFIELD

Original Mandamus Proceeding

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

In this case we decide, via mandamus, whether an aunt has standing to seek custody of her deceased sister's children via Section 102.003(a)(13) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 102.003(a)(13) (Supp.). The children are under the court-ordered conservatorship of biologically unrelated individuals. The conservators contend that standing under Section 102.003(a)(13) is conditioned on the parents of the children being deceased and that the aunt lacks standing because there are living biological fathers of the children. We find that the definition of "[p]arent" under Section 101.024(a) of the Texas Family Code applies to the definition of "parents" in Section 102.003(a)(13). *See* TEX. FAM. CODE ANN. § 101.024(a). Whether there are living biological fathers of the children, no living person met the definition of a "parent" under Section 101.024(a) at the time the aunt petitioned for custody under Section 102.003(a)(13). We find that the aunt has standing.

## I.    Background

This case concerns two sisters, Samantha Hale Battenfield and Jessica Hale, Jessica's children, and a family unrelated by blood, William "Hart" Clawson and Leona Clawson. The Clawsons took in three of Jessica's children, first via a guardianship, and then via conservatorship. Jessica expressly consented to the guardianship and waived service of process regarding the conservatorship. Samantha has children of her own who are in the same age range as Jessica's children. When Jessica died, the relationship between Samantha and the Clawsons became strained, and Samantha's access to Jessica's children was diminished. Then, while under the Clawsons' care, one of Jessica's children died. Samantha sought custody of her surviving

2

niece and nephew via a petition in intervention in the conservatorship. The Clawsons opposed Samantha's attempt to gain custody, asserting that Samantha, as the children's biological aunt, lacked statutory standing so long as the fathers of the children are alive. The Clawsons offered evidence of whom they contend those fathers to be. The trial court agreed with the Clawsons and granted the Clawsons' motion to dismiss Samantha's petition in intervention.

The trial court heard more testimony and legal arguments than we recite here. As might be expected, both sides were attempting to persuade the trial court regarding the ultimate outcome. We do not address the ultimate outcome. What is before us is a single question: Samantha's standing.

## II.    The Standing Arguments

The Clawsons assert that Samantha lacks standing because the fathers of the children are living. *See* TEX. FAM. CODE ANN. § 102.003(a)(13) ("An original suit may be filed at any time by . . . a person who is a relative of the child within the third degree by consanguinity, as determined by Chapter 573, Government Code, *if the child's parents are deceased* at the time of the filing of the petition." (emphasis added)). The Clawsons assert that "the plain and common meaning of the word 'parents' would necessarily include the biological father(s) of the children."

The Clawsons offered evidence that they contend established that there are living biological fathers.

Samantha responds that "parents" for purposes of Section 102.003(a)(13) has a statutory definition under Section 101.024(a) (defining "parent" as "the mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father

3

by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father"). TEX. FAM. CODE ANN. § 101.024(a).

Samantha testified that no man met any of the statutory definitions to be considered a parent under Section 101.024(a).[1] No contrary evidence was offered by the Clawsons.

## III. Standard of Review for Standing

"Standing, like other issues implicating a court's subject[-]matter jurisdiction, is a question of law that we review de novo." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). "In evaluating standing, we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *Id.*

## IV. Statutory Construction Principles

"Because standing to bring a [suit affecting the parent-child relationship (SAPCR)] is governed by statute, we apply statutory-interpretation principles in determining whether a plaintiff falls within the category of persons upon whom such standing has been conferred." *Id.* at 155.

"When interpreting statutes, we presume the Legislature's intent is reflected in the words of the statute and give those words their fair meaning." *Id.* "We analyze statutes 'as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they

---

[1] "[P]resumed father" in Section 101.024(a) means "[p]resumed father" as defined in Section 160.102(13) of the Texas Family Code. *In re C.M.V.*, 479 S.W.3d 352, 363–64 (Tex. App.—El Paso 2015, no pet.); *see* TEX. FAM. CODE ANN. § 160.102(13). Samantha testified that (1) Jessica was never married, (2) other than the initial custodianship proceeding and this proceeding, there has never been any court proceeding involving the children, (3) no one has ever been adjudicated to be the father of either of the children, (4) no man has ever acknowledged in an acknowledgment signed by Jessica that he is the father of either of the children, (5) no man has adopted either of the children, (6) no man has ever been adjudicated to be either of the children's father through genetic testing, (7) Jessica never signed any form of acknowledgment of paternity by any man for either of the children, and (8) neither child was the product of assisted reproduction with a sperm donor.

4

included and in what they excluded.'" *Id.* (quoting *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017)). "We look to the statutory scheme as a whole . . . not to snippets taken in isolation." *Ochsner v. Ochsner*, 517 S.W.3d 717, 721 (Tex. 2016).

## V.      Standard of Review for the Procedural Device of Mandamus

Mandamus requires an "abuse of discretion" by the trial court. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding) ("Mandamus is an extraordinary remedy requiring the relator to show that (1) the trial court abused its discretion and (2) the relator lacks an adequate remedy on appeal."). "Abuse of discretion," though, is a term of art in the mandamus context that sometimes applies to matters over which the trial court has no discretion: "[t]he trial court has no discretion in determining the law or applying the law to the facts." *In re Sherwin-Williams Co.*, 668 S.W.3d 368, 370 (Tex. 2023) (per curiam) (orig. proceeding); *see In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (orig. proceeding) ("We review de novo the trial courts' legal conclusions, including [questions of statutory construction], since an error of law or an erroneous application of law to facts is always an abuse of discretion.").

As noted above, standing and statutory construction are matters that we review de novo. That is the standard of review we use here in assessing whether there was error that meets the first prong of the mandamus standard.

The second mandamus prong, whether there is an "adequate remedy by appeal," is "simply a proxy for the careful balance of jurisprudential considerations that determine when

appellate courts will use original mandamus proceedings to review the actions of lower courts." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). "Although [the Texas Supreme Court] has tried to give more concrete direction for determining the availability of mandamus review, rigid rules are necessarily inconsistent with the flexibility that is the remedy's principal virtue." *Id.*

The Texas Supreme Court has "acknowledged that appeal 'is frequently inadequate to protect the rights of parents and children.'" *In re Tex. Dep't of Fam. & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding) (quoting *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987) (per curiam) (orig. proceeding)). Declaring "[j]ustice demands a speedy resolution," the Texas Supreme Court has granted mandamus to enforce mandatory venue in child custody cases. *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987) (per curiam) (orig. proceeding). Similarly, the Texas Supreme Court has found mandamus an appropriate tool to address unsupported temporary custody orders. *In re Tex. Dep't of Fam. & Protective Servs.*, 255 S.W.3d 613, 615 (Tex. 2008) (per curiam) (orig. proceeding). On the other hand, mandamus may not be appropriate when there is a statutory right to interlocutory or accelerated review. *In re Tex. Dep't of Fam. & Protective Servs.*, 210 S.W.3d at 614.

## VI.    Analysis

The statutory definition of "parent" prevails; the definition of "parent" in Section 101.024(a) applies to "parents" in Section 102.003(a)(13).

This is because, "[i]f a term is expressly defined by statute[,] we must follow that definition." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 636 (Tex. 2013).

Section 101.001(a) of the Texas Family Code provides, "Definitions in this subchapter apply to this title." TEX. FAM. CODE ANN. § 101.001(a). Both the definition provision of Section 101.024(a) and the standing provision of Section 102.003(a)(13) are in Texas Family Code, Title 5. *In re N.V.R.*, 580 S.W.3d 220, 223 (Tex. App.—Tyler 2019, pet. denied) (stating that Title 5 of the Texas Family Code includes Sections 101.001–266.013).

Since there is a statutory definition, the trial court erred by relying on what the Clawsons put forward as the purported plain meaning of "parents." "An alleged father . . . is not among the definitions of 'parent' under Section 101.024 . . . ." *Johnson v. Bigby*, No. 01-22-00738-CV, 2024 WL 3446937, at *7 (Tex. App.—Houston [1st Dist.] July 18, 2024, no pet.) (mem. op.).

Samantha is related to her sister's children "within the third degree by consanguinity." TEX. FAM. CODE ANN. § 102.003(a)(13). When Samantha filed her petition in intervention, Jessica was deceased, and if there are indeed living biological fathers, they were not "parents" for purposes of Section 102.003(a)(13) as defined by "parent" in Section 101.024(a).

Samantha has standing under Section 102.003(a)(13).[2,3]

---

[2]Consequently, we need not, and do not, reach the parties' arguments regarding Section 102.004 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 102.004. This is because Section 102.004 does not set forth additional requirements of Section 102.003(a)(13) standing; it sets forth additional independent methods of establishing standing. *Compare, e.g.*, Section 102.003(a)(13) (requiring the parents to be dead for suit to be brought) with Section 102.004(a)(2) (permitting suit with the parents' consent).

[3]The Clawsons further respond to the petition for writ of mandamus by contending that Samantha's petition in intervention was "procedurally improper" because the conservatorship had been closed by a final order. The trial court gained continuing and exclusive jurisdiction over the children via the conservatorship, and Samantha properly alleged that circumstances had changed since that order. "[I]n cases affecting the parent/child relationship, when the best interest of the child is always the overriding consideration, technical rules of pleading and practice are of little importance, and fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of the children." *In re Macalik*, 13 S.W.3d 43, 45 (Tex. App.—Texarkana 1999, no pet.) (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)). Samantha's live pleading petitioned the court to appoint her as sole managing conservator and award her possession of or access to the children, alleged standing under Sections 102.003(a)(13) and 102.004(a)(1), and alleged a material change in circumstances. Those allegations gave the

Samantha petitions for a writ of mandamus and also seeks review via regular appeal. There is, however, no statutory right to accelerated appeal. Briefing in the regular appeal is underway. Briefing on mandamus is complete. Both present the question of standing. As this involves children, and as the order on review, if left in place, would permanently cut off Samantha's legal rights to her niece and nephew, we opt to decide this via mandamus.

## VII. Conclusion

Based on the foregoing analysis, we hold that the trial court erred in striking Samantha's petition in intervention and that jurisprudential considerations, on balance, favor deciding this matter via mandamus.

Accordingly, we conditionally grant the petition for a writ of mandamus. The trial court is ordered to withdraw its October 2, 2024, order striking Samantha's petition in intervention and dismissing the case. The writ will issue only if the trial court fails to comply within fourteen days.

Jeff Rambin
Justice

Date Submitted:    February 13, 2025
Date Decided:      February 14, 2025

---

Clawsons and the trial court adequate and fair notice of Samantha's intent to bring an original SAPCR to modify the children's conservatorship. *See Jasek v. Tex. Dept. of Fam. & Protective Servs.*, 348 S.W.3d 523, 530 (Tex. App.—Austin 2011, no pet.). Further, because the trial court had acquired continuing, exclusive jurisdiction over the children as a result of the order appointing the Clawsons as managing conservators, "it would have been proper for [Samantha] to file an original proceeding there." *Id.* at 530–31 (citing TEX. FAM. CODE ANN. § 155.001). "[A] court acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a final order." TEX. FAM. CODE ANN. § 155.001(a) (Supp.).