

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-323-CV

IN RE KATHERINE KELSO[1]

------------

## ORIGINAL PROCEEDING

------------

## OPINION

------------

Relator Katherine Kelso has filed a petition for writ of mandamus asking this court to vacate the trial court's temporary orders (1) making her child's paternal grandparents, Rachel and Kurt Connor, joint managing conservators of the child along with her and (2) restricting the child's residence to Hood County. Because the evidence presented at the temporary orders hearing fails to show that the Connors had actual care, control, and possession of the child for six consecutive months ending not more than ninety days before filing their

------------

[1] For purposes of maintaining the confidentiality of this original proceeding, we will refer to all parties by fictitious names. *See* Tex. R. App. P. 9.8; Tex. Fam. Code Ann. § 109.002(d) (Vernon 2002).

petition, we hold that Katherine is entitled to relief; thus, we conditionally grant the writ.  *See* Tex. Fam. Code Ann. § 102.003(a)(9) (Vernon Supp. 2008).

**Background Facts**

On February 29, 2008, the Connors filed an Original Petition in Suit Affecting the Parent-Child Relationship (SAPCR), seeking to be named sole managing conservators of Katherine's child Richard.  The Connors are Richard's paternal grandmother and step-grandfather; Katherine is not married to Richard's father.[2]  The Connors pled that "[t]here are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child [who is] the subject of this suit."[3]  They also pled that they had standing to bring the suit because Katherine had voluntarily relinquished Richard to them and because they had had "actual care, control and possession" of Richard for at least six months, ending no more than ninety days preceding the filing of the petition.

On March 12, 2008, Katherine filed a Motion for Change of Venue, in

---

[2] The Connors named Richard's father in the suit, but he filed a waiver of service on March 14, 2008.  He is currently serving in the United States Navy.

[3] Katherine testified that she had filed for child support from Richard's father in Nueces County but that she did not pursue the suit based upon a verbal agreement.  She also testified that there was a court case involved and that blood testing had occurred.  According to Katherine, the case was still open; however, other than Katherine's testimony, there is no other evidence in the record regarding this suit.

which she contended that Richard's residence is in Nueces County, where he has lived since he was born in March 2006. She also alleged that Richard "has never resided in Hood County, Texas as interpreted by the Family Code" and requested that the trial court order the Connors to "hand the child over to his mother forthwith."

The trial court held a hearing on temporary orders on March 13, 2008. At the hearing, Rachel testified that she had had actual care, custody, and control of Richard for the past six months although she admitted that he had spent time with Katherine in Corpus Christi over the past year. According to Rachel, Richard began living with the Connors permanently in March 2007. Specifically, she said that Richard spent Easter 2007 with them and was "there often" around that time. She also testified that Richard lived with her and her husband "during the summer, Fourth of July, [and] the major holidays and events throughout the summer," as well as when school began. Rachel agreed that Richard was living and residing in her home "[a]ll during football season" of 2007, for Thanksgiving and around Christmas time, and from January to the date of the hearing. However, she also admitted that Richard had been with Katherine at Thanksgiving for a week to two weeks; she agreed with her counsel that these visits were "short stays away from home." Richard returned to the Connors for the Christmas holidays but only because Rachel agreed to

take his older brother too. Richard and his brother left the Connors' the day after Christmas, but Richard returned sometime in January 2008.

Rachel admitted that Richard was supposed to go back to Katherine on March 9, 2008. However, according to Rachel, Katherine called her on March 6—a week after the suit was filed—demanding that he be returned to her immediately. Rachel was upset because she had planned a party for Richard that weekend; she refused to let Katherine have him back after that.

Rachel testified that when Richard stayed with her and Kurt, Katherine did not provide any support or money, nor did she provide for any clothing, medical care, or other of Richard's needs. Rachel also said that Richard stayed in full-time daycare while staying with the Connors, which they paid for from $400 a month child support from Richard's father.

Rachel also testified that when Richard stayed with Katherine, he either went to daycare or stayed with a babysitter most of the time and that he stayed overnight with the babysitter more than with Katherine. Katherine corroborated this testimony, as did the babysitter, Tina Martin. Katherine and Tina both testified that Katherine works a lot; according to Katherine, she works up to six nights a week.

Tina testified that in her opinion, Richard's home for the past six months had been with the Connors and that he had not spent any substantial amount

of time in Katherine's care. Tina considered the stays with Katherine in Corpus Christi over the past year to be temporary. However, Tina also corroborated daycare records admitted by Katherine showing that Richard attended daycare in Nueces County during the school weeks in December and the first week of January.[4]

Katherine testified that she "never let [Richard] live" in Hood County. According to Katherine, she let Richard visit the Connors "[w]hen he first met them," Thanksgiving, Christmas, and then beginning in January 2008, when she had "some family issue [came] up" and asked Rachel "if she would help out by taking [Richard] until it was over." Katherine said that the longest period of time Richard had spent in Hood County was about a month and a half, "maybe, almost two," around Easter 2007, a couple of weeks at Thanksgiving, one week at Christmas, and then from the end of January 2008 until the hearing. Additionally, Katherine and Tina both testified that Richard has a doctor that he sees in Nueces County; Tina agreed that Katherine had taken Richard to that doctor six times in 2007—in February, March, May, August, and September—and on January 17, 2008.

At the conclusion of the hearing, the trial court entered temporary orders

---

[4] Although Tina also testified that Katherine told her the daycare will sometimes sign in Richard and his brother for her when they are not at school, this testimony was in reference to daycare records for March 2007, not the December and January records.

appointing the Connors joint managing conservators of Richard along with Katherine; giving the Connors the right to have the primary custody of Richard and to establish Richard's domicile, which the trial court restricted to Hood County; granting Katherine visitation on the third weekend of each month; and ordering Katherine to pay $192.85 per month to the Connors in child support.

Katherine filed this petition for writ of mandamus along with a motion for emergency temporary relief, seeking a stay of trial. We granted the motion, stayed the trial, and requested a response from the Connors. The Connors declined to file a response. In her petition for writ of mandamus, Katherine challenges (1) the trial court's determination that the Connors had standing to bring this suit and (2) the trial court's determination that it was in Richard's best interest that the Connors be named his temporary joint managing conservators.

**Analysis**

We review the trial court's determination of a party's standing to file a SAPCR by construing the pleadings in favor of the petitioner and looking to the pleader's intent. *In re M.J.G.*, 248 S.W.3d 753, 757 (Tex. App.—Fort Worth 2008, no pet.); *In re SSJ-J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.). We review the standing issue de novo. *M.J.G.*, 248 S.W.3d at 757; *SSJ-J*, 153 S.W.3d at 134. Standing is implicit in the concept of subject-matter jurisdiction,[5] and the trial court can consider evidence on the standing issue when evidence is necessary to determine jurisdictional facts.[6]

The Connors' petition alleged, and the trial court specifically found, standing under section 102.003(a)(9) of the family code rather than the more specific grandparent-standing provisions of section 102.004. *See* Tex. Fam. Code Ann. §§ 102.003(a)(9), 102.004 (Vernon Supp. 2008). To show standing under section 102.003(a)(9), the Connors had to prove that they had had actual care, control, and possession of Richard for at least six months, ending not more than ninety days before February 29, 2008, the date they filed

---

[5] *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008); *City of Arlington v. Centerfolds, Inc*., 232 S.W.3d 238, 244 (Tex. App.—Fort Worth 2007, pet. denied).

[6] *Bland ISD v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

their suit. *Id*. § 102.003(a)(9).[7] In computing the time under subsection (9), the trial court "may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id*. § 102.003(b).

Courts should determine a child's principal residence by looking at the following factors: (1) whether the child has a fixed place of abode within the possession of the party, (2) occupied or intended to be occupied consistently over a substantial period of time, and (3) which is permanent rather than temporary. *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex. App.—Dallas 2008, no pet.); *Doncer v. Dickerson*, 81 S.W.3d 349, 361 (Tex. App.—El Paso 2002, no pet.). In a modification case, for example, "permanency may be shown either by presence in the county for an extended period of time or by some agreement, explicit or implied, by the party with a right to control the child's residence, for the child to stay in the new county for an extended period of time." *Doncer*, 81 S.W.3d at 361 (quoting *In re S.D.*, 980 S.W.2d 758, 761 (Tex. App.—San Antonio 1998, pet. denied).

---

[7] Section 102.004 provides that a grandparent may file an original suit requesting managing conservatorship if there is satisfactory proof to the trial court that "(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit." Tex. Fam. Code Ann. § 102.004(a) (Vernon Supp. 2008).

Here, even considering the evidence in the light most favorable to the Connors, the evidence does not show that Katherine voluntarily relinquished permanent care, control, and possession of Richard to the Connors for the six months preceding their filing of the suit. By Rachel's own admission, Katherine had possession of Richard in November when Rachel called to ask if she could have him for the holidays; Katherine did not allow possession until Rachel agreed to take Richard's brother too. Tina testified that Richard attended daycare during the school week in Nueces County during December 2007 and the first week of January 2008. And Katherine testified that she asked Rachel to take Richard at the end of January on a temporary basis only; Rachel confirmed that Richard was to be returned to Katherine until Rachel became upset that Katherine wanted him back early. Thus, Rachel's own testimony shows that Katherine controlled where Richard would stay and for how long and that the Connors did not have such control. Nor is there any evidence that Katherine intended Richard to stay with the Connors for any extended periods of time. In other words, there is no evidence that Richard's abode in Hood County was fixed or permanent; rather, the evidence is that it was temporary, sometimes up to several months at a time, but always depending on Katherine's consent. We hold that the Connors did not meet their burden of proving standing to bring an original suit seeking managing conservatorship of Richard.

Moreover, given the nature of this suit and the Connors' lack of standing to maintain it, we also hold that mandamus is the proper remedy. *See In re Tex. Dep't of Prot. & Regulatory Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (acknowledging that appeal is frequently inadequate in child custody cases); *In re Roxsane R.*, 249 S.W.3d 764, 775 (Tex. App.—Fort Worth 2008, orig. proceeding).[8]

**Conclusion**

Having determined that the Connors did not prove standing to file suit under family code section 102.003(a)(9), we order the trial court to vacate its temporary orders signed March 26, 2008.[9] Moreover, because without standing the trial court lacks jurisdiction, we also order the trial court to dismiss the Connors' suit.[10] A writ will issue only if the trial court fails to comply with

---

[8] *See also In re Chambless*, 257 S.W.3d 698, 699–700 (Tex. 2008) (conditionally granting writ of mandamus and ordering trial court to vacate temporary orders granting grandparents visitation when mother not able to effectively cross-examine social worker at temporary order hearing); *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987) (granting mandamus to transfer venue of child custody case).

[9] Accordingly, Katherine's obligation to pay child support to the Connors shall cease immediately. Any wage withholding order that may have been issued in accordance with the trial court's temporary orders shall likewise terminate immediately.

[10] Our holding should not be construed as preventing the trial court from entering any temporary orders that may be otherwise permissible by law or that may be agreed to by the parties providing for visitation by the Connors as the trial court may find to be in Richard's best interest. *See, e.g.*, Tex. Fam. Code

this order.

We order the Connors to deliver Richard to Katherine at the Connors'
residence at 1001 Tolar Cemetery Road, Tolar, Texas 76476, in Hood County
at 6:00 p.m. this evening—or, if Katherine is unable to be at 1001 Tolar
Cemetery Road, Tolar, Texas 76476, in Hood County by that time, at a time
designated by Katherine with at least four hours' notice to the Connors or their
attorney of record by telephone.[11]

                                        TERRIE LIVINGSTON
                                        JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DAUPHINOT, J. dissents without opinion.

DELIVERED:  September 19, 2008

---

Ann. §§ 109.001, 153.001–.002 (Vernon 2002).

[11] We deny Katherine's Motion for Emergency Relief filed September 15,
2008 as moot.