

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00102-CV

IN THE INTEREST OF S.D., A CHILD

----------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 325-550977-14

----------

## MEMORANDUM OPINION[1]

----------

After the same-sex relationship between Appellant S.L.D. and Appellee S.M.D. ended, S.L.D. filed suit seeking joint managing conservatorship of S.D., a child born to S.M.D. through artificial insemination during the relationship. S.L.D. based her claim to standing on family code section 102.003(a)(9), which provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days

---

[1]*See* Tex. R. App. P. 47.4.

preceding the date of the filing of the petition," has standing to bring a suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. § 102.003(a)(9) (West 2014).[2] The trial court granted S.M.D.'s motion to dismiss the suit for lack of standing.[3]

In a single issue, S.L.D. appeals the trial court's order, arguing, among other things, that section 102.003(a)(9) does not require a person to have exclusive care, control, or possession of the child to have standing.[4] We disagree.

We held in *M.J.G.* that grandparents lacked standing to intervene in their daughter and son-in-law's divorce proceedings to seek custody of their grandchildren under section 102.003(a)(9) when, at all times that the children

---

[2]In computing the time necessary for standing under subsection (a)(9), the court shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit. Tex. Fam. Code Ann. § 102.003(b). "Principal residence" is a fixed place of abode within the party's possession, occupied or intended to be occupied consistently over a substantial period of time, and which is permanent rather than temporary. *In re Kelso*, 266 S.W.3d 586, 590 (Tex. App.—Fort Worth 2008, orig. proceeding). The parties and the child lived together in the same home until around a month before S.L.D. filed suit.

[3]Standing is a constitutional prerequisite to maintaining a suit under Texas law. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *In re M.J.G.*, 248 S.W.3d 753, 762–63 (Tex. App.—Fort Worth 2008, no pet.).

[4]S.L.D. also argues that section 102.003(a)(9) contains no requirement that the biological parent must be unfit or must abdicate her parental responsibilities before a nonparent under section 102.003(a)(9) can attain standing. Based on our resolution here, we do not reach these sub-issues. *See* Tex. R. App. P. 47.1.

2

lived with the grandparents, the children's mother also lived there. 248 S.W.3d at 756–58. The children stayed alone with their grandparents only occasionally or temporarily while their mother was at work. *Id.* Despite the grandparents' having performed day-to-day caretaking duties for the children, there was no evidence that the mother did not also care for the children or that she had abdicated her parental duties and responsibilities to the grandparents; therefore, we concluded that the grandparents did not have "actual care, custody, and control" under section 102.003(a)(9). *Id.* at 758–59; *see also In re E.C.*, No. 02-13-00413-CV, 2014 WL 3891641, at *2 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.)(mem. op.) (holding that grandparents lacked standing under section 102.003(a)(9) because they only had exclusive possession of the child for five and a half months before filing suit). Likewise, in *Kelso*, we held that the grandparents did not establish standing under section 102.003(a)(9) because they did not show that they had actual care, control, and possession of the child when the record reflected that the child's mother controlled where the child would stay and for how long and that the grandparents did not have such control. 266 S.W.3d at 591.

The record does not reflect that S.M.D. ever relinquished or abdicated permanent care, control, and possession of S.D. to S.L.D.[5] Accordingly, we

---

[5]S.L.D. testified that she was the parties' sole provider when S.M.D. was a stay-at-home mother and that she would get up with S.M.D. when S.D. woke up crying at night; S.L.D. also changed diapers, bought clothing for the child, had S.D. "[a] lot of times" during the day when not at work, and helped S.M.D. with

3

conclude that S.L.D. failed to establish the actual care, control, and possession necessary to establish standing in this case.[6]  *See E.C.*, 2014 WL 3891641, at *2; *Kelso*, 266 S.W.3d at 591; *M.J.G.*, 248 S.W.3d at 756–59.  We overrule S.L.D.'s sole issue and affirm the trial court's judgment.


PER CURIAM


PANEL:  MCCOY, WALKER and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DELIVERED:  December 11, 2014

---

day-to-day child-raising, but she did not take care of S.D. by herself for any extended period of time.  S.L.D. said that she and S.M.D. had had plans for S.L.D. to legally adopt S.D.

S.M.D. testified that there was never a time when she asked S.L.D. to take care of the child because S.M.D. was unable to do so and never a time when she gave S.L.D. the child and let her make important decisions about the child's life.  There is no evidence that S.M.D. failed to care for the child or abdicated her parental duties and responsibilities to S.L.D.

[6]While other courts of appeals might have reached the opposite conclusion on the same or similar facts, *see, e.g.*, *In re B.A.G.*, No. 11-11-00354-CV, 2013 WL 364240, at *6, *9–10 (Tex. App.—Eastland Jan. 31, 2013, no pet.) (mem. op.); *Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 526 (Tex. App.—Austin 2011, no pet.); *In re M.K.S.-V.*, 301 S.W.3d 460, 461–62 (Tex. App.—Dallas 2009, pet. denied) (op. on reh'g), we are not bound by the decisions of our sister courts.  *Cf. In re I.I.G.T.*, 412 S.W.3d 803, 807–09 (Tex. App.—Dallas 2013, no pet.) (holding nonparent lacked standing under section 102.003(a)(9) when there was no court order for his possession of the child before he filed suit and no equivalent contractual possession schedule and the evidence conflicted on whether the parties had an agreement for his regular possession of the child and whether the child's residing with nonparent was intended to be a permanent arrangement).