# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00261-CV

**Anish Jhaveri, Appellant**

**v.**

**Kelly McBeth, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-AG-06-000883, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Anish Jhaveri appeals from an order appointing Kelly McBeth sole managing conservator of H.E.J.S., Jhaveri's son and McBeth's grandson. Jhaveri raises four issues on appeal. In his first issue, Jhaveri contends that McBeth failed to "plead and prove certain facts," as required to have standing under sections 153.432 and 153.433 of the Texas Family Code. *See* Tex. Fam. Code §§ 153.432, .433. In his second issue, Jhaveri contends that McBeth did not have standing to obtain a modification of conservatorship under sections 102.003(a)(9) and 102.004 of the Texas Family Code. *See id*. §§ 102.003(a)(9), .004. In his third issue, Jhaveri contends that the trial court abused its discretion by modifying the original custody order because the evidence was legally and factually insufficient to support the trial court's finding that "the grounds for modification" were established. In his fourth issue, Jhaveri contends that section 156.101 of the Texas Family Code is unconstitutional on its face and as applied. *See id.* § 156.101. We will affirm.

## BACKGROUND

H.E.J.S., the biological child of Jhaveri and Quincy Smith, was born in 2005. In 2006, following the establishment of Jhaveri's paternity, Jhaveri and Smith were appointed joint managing conservators pursuant to an order establishing the parent-child relationship.[1] The trial court designated Smith as the conservator with the exclusive right to designate the primary residence of H.E.J.S. and awarded Jhaveri possessory rights under a modified standard possession and access order. For the first four years of his life, H.E.J.S. resided primarily with Smith, both at the house of Smith's mother, McBeth, and in an apartment McBeth rented for Smith. In 2009, while H.E.J.S. and Smith were staying with McBeth, Smith abruptly moved out, leaving H.E.J.S. in McBeth's care.

In 2011, Jhaveri filed a petition to modify the original custody order, requesting that he be appointed sole managing conservator.[2] In response, McBeth filed a petition in intervention, to which was attached Smith's sworn consent, requesting that McBeth be appointed sole managing conservator or a joint managing conservator with the exclusive right to designate H.E.J.S.'s primary residence. The trial court presided over a two-year investigation, appointing Lisa Walker, Ph.D. as guardian ad litem. In a report to the court dated March 3, 2013, Dr. Walker, despite acknowledging certain reservations about Jhaveri's attitude and interests, recommended that Jhaveri and McBeth be appointed joint managing conservators, with McBeth as the conservator with the exclusive right to designate H.E.J.S.'s primary residence. However, in a subsequent report dated August 20,

_____

[1] The original order is found only in the appendix of Jhaveri's initial brief. Neither party disputes the authenticity or accuracy of the order.

[2] Smith responded to the suit by filing a general denial but was otherwise uninvolved in the case and was not present at the modification hearing.

Walker changed her previous recommendation out of concern that Jhaveri's anger and aggressive behavior suggested emotional instability potentially harmful to H.E.J.S. Jhaveri's possessory rights were temporarily suspended and replaced with supervised visitations. In addition, Walker retained Susan McMillan, Ph.D. as the treating child therapist for H.E.J.S.

After holding a hearing in December 2013, the trial court signed an order appointing McBeth as H.E.J.S.'s sole managing conservator and Jhaveri as a possessory conservator. The trial court expressly found that McBeth had standing to bring the suit under section 102.003(a)(9) of the Texas Family Code. *See id*. § 102.003(a)(9) ("An original suit may be filed at any time by . . . a person who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition."). The trial court also found that there had been a material and substantial change in circumstances since the last order and that the requested modification of conservatorship was in H.E.J.S.'s best interest. This appeal followed.

## STANDARD OF REVIEW

Standing is a component of subject-matter jurisdiction and a constitutional prerequisite to bringing a lawsuit. *Jasek v. Texas Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 527 (Tex. App.—Austin 2011, no pet.). The Texas Legislature has provided a comprehensive statutory framework for standing in the context of suits involving the parent-child relationship. *In re J.C.*, 399 S.W.3d 235, 238 (Tex. App.—San Antonio 2012, no pet.). When standing to bring a particular type of lawsuit has been conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party. *Jasek*, 348 S.W.3d at 528. The party seeking relief must allege and establish standing within the parameters of the statutory language. *Id*.

3

A trial court's decision to modify a joint managing conservatorship is reviewed for a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also Blackwell v. Humble*, 241 S.W.3d 707, 715 (Tex. App.—Austin 2007, no pet.). The abuse of discretion standard overlaps with traditional sufficiency standards of review in family law cases, creating a hybrid analysis. *Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex. App.—Austin 2006, pet. denied). The reviewing court therefore engages in a two-pronged inquiry to decide whether the trial court abused its discretion: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in the application of its discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477-78 (Tex. App.—Austin 2002, no pet.). The focus of the first inquiry is the sufficiency of the evidence. *Zeifman*, 212 S.W.3d at 588. The reviewing court must then decide whether, based on the evidence before it, the trial court made a reasonable decision. *Id*. As a result, legal and factual sufficiency are not independent grounds of error in modification cases; rather, they are relevant factors in deciding whether the trial court abused its discretion. *In re T.M.P.*, 417 S.W.3d 557, 562 (Tex. App.—El Paso 2013, no pet.). When, as here, a trial court does not make findings of fact and conclusions of law, it is implied that the trial court made all findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). These implied findings may be challenged for legal and factual sufficiency.

To determine whether there is legally sufficient evidence, we consider the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's

4

findings only if they are so contrary to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Id.* at 822. When the evidence conflicts, we must presume that the factfinder resolved any inconsistencies in favor of the order if a reasonable person could do so. *Id.* at 821. The trial court does not abuse its discretion if evidence of a substantive and probative character exists in support of its decision. *Zeifman*, 212 S.W.3d at 587. The trial court is in the best position to observe and assess the witnesses and their demeanor, and an appellate court must give "great latitude" to the trial court in determining the best interest of a child. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). As a result, the mere fact that an appellate court might decide the issue differently than the trial court does not establish an abuse of discretion. *Zeifman*, 212 S.W.3d at 587.

## DISCUSSION

### *Standing*

In his first two issues, Jhaveri contends that McBeth lacked standing to obtain a modification under sections 153.432, 153.433, 102.003(a)(9), and 102.004 of the Texas Family Code.[3] Under section 102.003(a)(9), "an original suit [for modification of a conservatorship] may be filed at any time by . . . a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Tex. Fam. Code § 102.003(a)(9).

---

[3] Because we conclude that McBeth had standing to intervene under section 102.003(a)(9), we need not address whether she also had standing under sections 102.004, 153.432 or 153.433. *See* Tex. R. App. P. 47.1.

5

Jhaveri does not contend that McBeth did not have actual care, control, and possession of H.E.J.S. for the requisite time period. Instead, Jhaveri claims that in situations in which both a nonparent and a parent jointly care for a child, "evidence that the parent and the person both cared for the child will not be sufficient to confer standing."[4] In support of his argument, Jhaveri cites *In re M.J.G.*, 248 S.W.3d 753 (Tex. App.—Fort Worth 2008, no pet.). In *M.J.G.*, the children lived with their parents and maternal grandparents. *Id*. at 756. When the children's parents initiated divorce proceedings, the grandparents filed a petition in intervention under section 102.003(a)(9). *Id*. The court held that the grandparents did not have standing because they had failed to establish actual care, control, and custody of the children. *Id*. at 758. Both the parents and grandparents were responsible for the children's care and there was no evidence that the parents had "abdicated their parental responsibilities and duties to the grandparents." *Id*. at 759.

The facts of *M.J.G.* are distinguishable from those in the present case. Here, H.E.J.S. lived primarily with McBeth and saw Jhaveri only under a limited visitation schedule. Jhaveri did not significantly contribute financially to H.E.J.S.'s care and was heavily delinquent on child support. McBeth was almost solely responsible for H.E.J.S.'s day-to-day care. As this Court has previously noted, "Nothing in section 102.003(a)(9) requires that care, custody, control and possession be exclusive." *See Jasek*, 348 S.W.3d at 535 (citing *Smith v. Hawkins*, No. 01-09-00060-CV, 2010 WL 3718546, at *3 (Tex. App.—Houston [1st Dist.] Sept. 23, 2010, pet. denied) (mem. op.)).

---

[4] Jhaveri also claims that McBeth's "inequitable conduct" in allegedly forcing Smith from her home and failing to inform Jhaveri of the change estops her from asserting standing. Jhaveri, however, has provided no legal authority for this position.

Jhaveri also maintains that certain requirements must be met in order for there to be a constitutionally compliant application of the standing provision in section 102.003(a)(9). *See Troxel v. Granville*, 530 U.S. 57 (2000) (holding that when fit parent's decision as to whether it would be beneficial for child to have relationship with his or her grandparents becomes subject to judicial review under grandparental access statute, court must accord at least some special weight to parent's own determination). Jhaveri contends that McBeth did not have standing under section 102.003(a)(9) because: (1) the evidence is legally and factually insufficient to support a finding that Jhaveri consented to McBeth's care, control, and possession of H.E.J.S.; (2) the evidence is legally and factually insufficient to support a finding that McBeth exercised "actual" possession because her possession of H.E.J.S. was never intended to be permanent; (3) there is conclusive evidence that any care, control, or possession McBeth exercised was impermissibly in violation of a court order; and (4) McBeth was merely acting as Smith's representative and therefore could not exercise actual care, control, or possession. According to Jhaveri, these circumstances rendered the application of section 102.003(a)(9) unconstitutional.

Jhaveri first argues that section 102.003(a)(9) must provide some form of protection of a parent's fundamental right to make decisions concerning the care, custody, and control of his or her child. Quoting this Court's opinion in *Jasek*, Jhaveri maintains, "Presumably, a person would only be able to meet [the requirements of section 102.003(a)(9)] with some type of parental or conservator consent, actual or constructive." *Jasek*, 348 S.W.3d at 536. Jhaveri construes this Court's language to require both parents' express consent or consent through conduct. However, such an interpretation takes this Court's language out of context. The full language used by this

Court indicates that the consent requirement is met by "some type of parental or conservator consent, actual or constructive, *such as where a parent leaves a child in the care of other people for more than six months*." *Id*. (emphasis added). This Court continued, "Thus, unlike the statute in *Troxel*, section 102.003(a)(9) does not violate a parent's right to make decisions regarding their children; rather, it imposes potential legal consequences for certain types of parental decisions." *Id*.

We have found no case law that expressly construes section 102.003(a)(9) to include a requirement of parental consent to acquire standing through possession. "In the absence of authority for a consent exception to standing through possession, we will not engraft one." *In re S.S.G.*, 208 S.W.3d 1, 4 (Tex. App.—Amarillo 2006, pet. denied). Of the cases cited by Jhaveri for the proposition that possession under section 102.003(a)(9) requires express or constructive consent, not one holds that consent is necessary for actual possession. In fact, in one of the cases cited, this Court unambiguously stated, "[N]othing in the language of subsection 102.003(a)(9) expressly requires that either parent consent to a nonparent's possession of a child before the nonparent may file a suit affecting a parent-child relationship." *In re E.N.C.*, No. 03-07-00099-CV, 2009 WL 638188, at *4 (Tex. App.—Austin Mar. 13, 2009, no pet.) (mem. op.).

Jhaveri next asserts that, in determining what constitutes "actual" care, control, and possession, "courts of appeal[s] have interpreted section 102.003(a)(9)'s language to require *permanent* care, control, and possession." It is true that some courts of appeals have found a permanency requirement in section 102.003(b)'s mandate that in computing the time of possession necessary for standing, the court "shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *In re Kelso*, 266 S.W.3d 586, 590

8

(Tex. App.—Fort Worth 2008, orig. proceeding); *see In re K.K.T.*, No. 07-11-00306-CV, 2012 WL 3553006, at *3 (Tex. App.—Amarillo Aug. 17, 2012, no pet.) (mem. op.); *In re Fountain*, No. 01-11-00198-CV, 2011 WL 1755550, at *4 (Tex. App.—Houston [1st Dist.] May 2, 2011, orig. proceeding) (mem. op.). This Court, however, has concluded that section 102.003(a) does not incorporate the permanency requirement Jhaveri advocates. *See Jasek*, 348 S.W.3d at 535 ("[N]othing in section 102.003(a) requires that a parent or other conservator have 'voluntarily relinquished *permanent* care, control, and possession.'") (emphasis added).

Jhaveri also contends that "courts of appeal[s] have interpreted section 102.003(a)(9)'s language to prevent a party from establishing actual care, control, and possession when that care, control, and possession is in violation of a court order." However, the trial court's original order, which is the one Jhaveri contends Smith violated, is not part of the record before either the trial court or this Court. It is well-established that an appellate court may not consider matters outside of the record. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex. App.—Austin 1991, writ denied); *see Hunt v. State ex rel. K.C.*, No. 03-11-00352-CV, 2012 WL 3793283, at *3 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op.); *see also* Tex. R. App. P. 38.1(g) (requiring that facts pertinent to appellate issues "must be supported by record references"). Without the order, we are unable to make the threshold determination that McBeth's possession of H.E.J.S. did in fact violate a court order.

Finally, Jhaveri argues that McBeth's care, control, and possession of H.E.J.S. stems from the legal authority granted to Smith by the original order establishing the parent-child relationship and, therefore, that McBeth cannot exercise *actual* care, custody, and control, as she

9

acts "solely as Smith's representative." This argument runs in direct contravention of our decision in *Jasek* and the language of section 102.003(a)(9).

In *Jasek*, this Court held that to establish standing under section 102.003(a)(9) it was necessary merely to show actual control, meaning "the actual power or authority to guide or manage . . . without regard to . . . the legal or constructive power or authority" to do so. 348 S.W.3d at 537. In doing so, we rejected those cases construing section 102.003(a)(9) to require that a parent or conservator relinquish rights over a child or that the person seeking standing "have ultimate legal authority" to control a child. *Id*. at 535.

We are unpersuaded by Jhaveri's attempt to distinguish *Jasek*. Jhaveri argues that the Jaseks had standing because they had been granted legal authority over the children by the Texas Department of Family and Protective Services. In *Jasek*, the Department filed suit against the natural parents of two children, seeking to terminate the parent-child relationship; was itself appointed sole managing conservator; and subsequently placed the children in the care of the Jaseks pursuant to a placement agreement. *Id*. at 526-27. When Philip Jasek tested positive for marijuana, the Department removed the children from the Jaseks' home. *Id*. at 527. The Jaseks filed suit seeking to be appointed the sole managing conservators of the children. *Id*. The Jaseks were held to have standing under section 102.003(a)(9). *Id*. at 537. Contrary to Jhaveri's assertion, the Department had not transferred legal rights over the children to the Jaseks but rather it remained the sole managing conservator prior to the filing of the Jaseks' suit. In *Jasek*, as here, persons with actual care, control, and possession of children brought suit to modify a conservatorship in which other people were vested with legal authority over the children.

10

Having rejected Jhaveri's arguments in support of his contention that McBeth lacks standing under section 102.003(a)(9) of the Texas Family Code, we overrule his second issue.

***Grounds for Modification***

In his third issue, Jhaveri contends that the trial court abused its discretion by modifying the original order because the evidence was legally and factually insufficient to support the trial court's finding that the "grounds for modification" were established. Jhaveri first argues that the trial court abused its discretion in finding that a material and substantial change had occurred since the original order establishing the parent-child relationship. Specifically, Jhaveri maintains that evidence of "H.E.J.S.'s mother's relinquishment of her parental duties and [McBeth's] usurpation of those duties" is legally and factually insufficient to support the court's finding of such a change.

A trial court may modify a conservatorship order if the "circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the time of the rendition of the original order and if the modification is in the child's best interest. Tex. Fam. Code § 156.101(a)(1)(A). A court's determination of whether a material and substantial change of circumstances has occurred is not based on rigid rules and is fact-specific. *Zeifman*, 212 S.W.3d at 593. Material changes may be established by either direct or circumstantial evidence. *In re T.M.P.*, 417 S.W.3d at 564. A change in home surroundings and moving of residences have been found to be material and substantial changes. *Id.* (citing *In re A.L.E.*, 279 S.W.3d at 429); *see Downey v. Downey*, No. 03-12-00037-CV, 2014 WL 1362642, at *4 (Tex. App.—Austin Apr 1, 2014, no pet.) (mem. op.). Whether a particular change is material and substantial depends on the circumstances of each case. *In re T.M.P.*, 417 S.W.3d at 564.

11

The evidence presented to the trial court in this case was legally and factually sufficient to support the trial court's finding that a material and substantial change had occurred. When asked by his trial counsel why the trial court was "doing a modification," Jhaveri testified, "Because there has been an extraordinary set of change in circumstances. My son's mother had left our son with her mother without letting me know." The trial court additionally acknowledged, "[A] mom has abandoned her child. That's really what happened here."

There was also testimony that the change likely had a particularly extreme impact on H.E.J.S., who has been diagnosed as having Asperger's syndrome. Dr. McMillan, H.E.J.S.'s treating therapist, testified, "You don't change horses midstream with [H.E.J.S.] and expect him to be able to go with the flow. As a matter of fact, he has more trouble, because of the Asperger's, than most children would have." McMillan further testified that a change in where H.E.J.S. lived would be the "type of transition that would likely cause him problems."

Given these facts, the trial court did not abuse its discretion in concluding that a material and substantial change had occurred.

Jhaveri next argues that the trial court abused its discretion by finding that it is in H.E.J.S.'s best interest that McBeth be appointed sole managing conservator. Jhaveri argues that the evidence was legally and factually insufficient to support the trial court's best-interest finding.

The court looks to the following factors when deciding a child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best

12

interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). In chapter 156 modification suits, a court may also consider stability for the child and the need to prevent constant custody litigation. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

The evidence in this case is legally and factually sufficient to support the trial court's finding that the modification of conservatorship is in H.E.J.S.'s best interest. As mentioned above, McMillan, H.E.J.S.'s therapist, testified to the importance of stability for a child with Asperger's. There was significant concern expressed by multiple witnesses that Jhaveri's emotional volatility and anger are damaging to H.E.J.S.'s well-being. McMillan testified that H.E.J.S., prior to the start of Jhaveri's supervised visitations, would become agitated and insist on the presence of bodyguards "to protect us from Dad." McMillan also testified that at their therapy sessions during periods in which H.E.J.S. had regular contact with his father, H.E.J.S.'s stutter would become more pronounced when discussing his father. McMillan also testified that H.E.J.S. would "stockpile" toy weapons. McMillan testified that, based on what H.E.J.S. communicated to her through his words and actions, she concluded that he thought "his dad is scary at times to him and scary at times to other people." By contrast, McMillan testified that H.E.J.S. uses McBeth as his "touchstone" and considers McBeth's residence to be "his primary home."

Dr. Walker, H.E.J.S.'s guardian ad litem, also testified to her concerns about Jhaveri's ability to parent. As mentioned above, Walker initially recommended that both Jhaveri and McBeth

13

be appointed joint managing conservators. However, Walker changed her recommendation after becoming "really concerned about the focus not being on [H.E.J.S.]" and "[Jhaveri's] lack of understanding of [H.E.J.S.'s] needs." In her reports to the court, Walker conveyed the frustration of school officials, who asserted that Jhaveri had resisted H.E.J.S.'s Asperger's diagnosis, believing it to be something manufactured by McBeth in an attempt to "create the impression that [H.E.J.S.] has specific needs that she is able to address better than he can." Walker testified that instead of focusing on H.E.J.S.'s needs, Jhaveri felt that his being H.E.J.S.'s father "is big enough for him to be the person in charge."

With respect to Jhaveri's temperament, Walker testified, "He tends to be aggressive and his language and posture and demeanor tends to be aggressive . . . . And I've worked with parents who are tough. But I can tell you that I felt a bit unsafe around Mr. Jhaveri." Walker described an incident in which H.E.J.S., clearly distraught, contacted her late at night and stated, "I don't want to talk with my dad anymore on the phone. I don't want to go back to my dad. My dad is scary. I want to tell you everything that I've been keeping as a secret that Dad has said I should not share with you." Walker further testified that H.E.J.S. had stated that "[m]y dad is a bad person" and is "losing his mind." On another occasion, according to Walker's testimony, H.E.J.S. pointed to California on a globe and stated to Walker, "Dad will go back to California. He told me that if I don't come back to live with him, he'll go to California. So you have to fix this. My dad is super sad, and I've got to take care of this and you've got to fix this."

McBeth's other daughter, H.E.J.S.'s aunt, also testified that her biggest concern was "to watch the way that [Jhaveri] uses . . . aggression to control [H.E.J.S.] with fear and to manipulate

14

behaviors from [H.E.J.S.] for his own gain." She also testified that Jhaveri has screamed at her in front of H.E.J.S. several times. After one such time, H.E.J.S. shook and cried, stating, "I knew he was going to be mad at you. I knew he was. We talked about it. I should have been out in the porch with you. I could have stopped him from saying those things. Something is wrong with him. He is so mad all the time." According to the aunt's testimony, H.E.J.S. then turned to a friend of his who was present and stated, "You don't even want to know my dad. He will hurt you."

While the trial court did not issue specific findings of fact, it did briefly explain its reasoning for modifying the conservatorship. The trial court acknowledged Jhaveri's love for H.E.J.S. and stated that it did not consider him a danger to his child. However, it emphasized that McBeth "has stepped in and helped parent this child . . . and shown that she is the stable force in this child's life and is parenting him primarily." Jhaveri, disagreeing with the trial court's ruling but recognizing the gravity of the testimony against him, conceded, "[O]bviously there has been some testimony that you could have—you could have made even a worse decision."

Based on this record, we conclude that the trial court did not abuse its discretion in appointing McBeth as H.E.J.S.'s sole managing conservator. There is sufficient evidence to support the reasonableness of the trial court's decision.

The evidence is legally and factually sufficient to support the trial court's finding that the statutory requirements for modification were satisfied. The court did not abuse its discretion in finding that a material and substantial change had occurred since the original order and that it is in H.E.J.S.'s best interest that McBeth be appointed sole managing conservator. We overrule Jhaveri's third issue.

15

*Constitutionality of Section 156.101*

In his final issue, Jhaveri contends that the modification-of-conservatorship provisions contained in section 156.101 of the Texas Family Code violate the due process clauses of the United States and Texas Constitutions and contravene the United States Supreme Court's directive in *Troxel v. Granville* that a trial court accord "at least some special weight" to a parent's own determination of a child's best interests when ordering grandparental visitation rights. *See Troxel*, 530 U.S. at 70; *see also* U.S. Const. amend. XIV § 1; Tex. Const. art. I, § 19. Jhaveri maintains that to avoid infringing on the "fundamental right of parents to make child rearing decisions," the statute must include a presumption in favor of parental custody, which may be rebutted only when another party has proven that placing the child with the parent would have a substantial risk of harm to the child's physical or mental health or that the parent is unfit. *See Troxel*, 530 U.S. at 72-73.

Jhaveri raises the issue of the statute's constitutionality for the first time in his brief on appeal. A challenge to the constitutionality of a statute must be raised in the trial court in order to be preserved for appellate review. *Loftin v. Lee*, 341 S.W.3d 352, 356 n.11 (Tex. 2011) ("Lee did not raise these issues in the trial court, and therefore she cannot argue them here."); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (concluding that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute"); *Wall v. Texas Dep't of Family & Protective Servs.*, No. 03-04-00716-CV, 2006 WL 1502094, at *1 (Tex. App.—Austin June 2, 2006, no pet.) (mem. op.) (holding that challenge to constitutionality of Texas Family Code section 161.103(3), governing relinquishment of parental rights, was waived because raised for first time in appellate brief); *see In re Commitment of Cary*, No. 09-14-00160-CV, 2015 WL 3406949,

16

at *3 (Tex. App.—Beaumont May 28, 2015, no pet.) (mem. op.). Because Jhaveri did not challenge section 156.101's constitutionality in the trial court, he may not do so on appeal and the challenge has been waived. We overrule Jhaveri's fourth issue.

## CONCLUSION

Having overruled all of Jhaveri's issues, we affirm the trial court's modification order.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   December 10, 2015

17