

COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-15-00303-CV**

IN THE INTEREST OF H.S.,
A MINOR CHILD

----------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 231-543098-13

----------

# MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

The sole issue we address in this appeal is whether the trial court erred by ruling that Grandparents[2] lack standing under Texas Family Code section 102.003(a)(9) to file an original suit seeking to modify Mother's and Father's

---

[1]*See* Tex. R. App. P. 47.4.

[2]Grandparents, who are appellants in this appeal, are the maternal grandmother and step-grandfather of H.S.

parent-child relationship with Grandparents' granddaughter, Heather.[3]  *See* Tex. Fam. Code Ann. § 102.003(a)(9) (West Supp. 2015).  Because Grandparents lack standing, we will affirm the trial court's order granting Father's plea to the jurisdiction and dismissing Grandparents' suit.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The facts are straightforward and undisputed.[4]  The following testimony was elicited at the hearing on Father's plea to the jurisdiction asserting that Grandparents lack standing.

Although Heather's Mother and Father never married, they coparented Heather from birth.  Mother and Father were joint managing conservators of Heather, and Mother had the right to designate Heather's primary residence.[5] Mother and Heather lived primarily with Grandparents until Heather was a little over a year old.  Around this time, in March 2014, Grandparents, Father, and Mother all agreed that Mother needed to address her alcohol-abuse issues by participating in and living at Sober Living.

---

[3]We utilize a fictitious name for the child involved.  *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014).

[4]At Grandparents' request, the trial court made findings of fact and conclusions of law; the trial court made forty findings of fact and five conclusions of law.

[5]The Office of the Attorney General issued a child support review order after Heather was born and was provided an opportunity to file a brief in this appeal but did not.

Mother testified that she and Father initially discussed having Heather live with Father during Mother's rehab, but they decided against it because they thought Mother's stint in rehab would be "extremely temporary," not longer than three months. Grandparents approached Mother and asked if Heather could stay with them while Mother underwent rehab. Grandparents, Father, and Mother held a family meeting, and everyone agreed that Heather would stay with Grandparents. Mother testified that she agreed to let Heather stay with Grandparents as "a temporary solution until [she] got back on [her] feet and got a little more stable in [her] recovery[,] and then [Heather] would go back to stay[ing] with [Mother], and [Father] and [Mother] would continue to coparent together." Mother reiterated that she always intended to and did return for Heather, that Heather's stay with Grandparents was a temporary situation, and that Grandparents agreed to this arrangement.

As it turned out, Mother's rehab took longer than expected, and Grandparents filed a petition to modify Mother's and Father's parent-child relationship with Heather on October 4, 2014—six months and one week after Mother had entered rehab. Grandparents alleged that Mother had voluntarily relinquished the actual care, custody, and control of Heather and requested to be appointed as the persons with the exclusive right to designate Heather's primary residence; the right, after consultation with Father and Mother, to make invasive medical decisions for Heather; the right to receive child support; and the right, after consultation with Father and Mother, to make educational decisions for

3

Heather. Father answered, denying that Mother had voluntarily relinquished Heather's actual care, custody, and control to Grandparents for six months prior to the date they filed suit and filed a plea to the jurisdiction asserting that Grandparents lacked standing to bring their suit.[6]

Mother explained that while she lived at Sober Living, she worked and then went to Grandparents' house in the evenings to have dinner with Heather, to spend time with her, to bathe her, and to put her to bed. Mother picked up Heather from daycare on occasions when she was able to borrow a car. Mother continued to make decisions regarding Heather, and both Mother and Grandmother made doctor appointments for Heather. Mother signed a consent with one doctor to allow Grandparents to have Heather treated because Heather had serious ear infections. Mother testified that by signing the medical authorization for Heather, Mother was not relinquishing care and control of Heather to Grandparents. Mother said that Grandmother tried to keep her and Father reasonably informed about the doctor appointments that Grandmother made for Heather. Mother agreed that Grandparents paid for Heather's daycare and were primarily in charge of Heather's day-to-day activities while Mother was in rehab. Mother testified that she kept in contact with Grandmother and never intended to relinquish care and control of Heather.

---

[6]After Grandparents filed suit in October 2014, the trial court determined that it was in Heather's best interest for Father to have possession of her until the issue of Grandparents' standing was resolved.

While Mother was in treatment, Father kept Heather every other weekend and saw Heather "more than that." Sometimes Father would pick up Heather on Thursday and would keep her until Sunday. Mother said that she talked to Father about Heather every day during that time (March to October 2014) and that Father brought Heather to see Mother.

Mother testified that during the March to October time frame, Mother and Father both repeatedly expressed the opinion that Heather should live with Father, but Grandmother "disagreed." Mother explained that when Grandmother did not agree to let Heather live with Father, she believed "that my mom wants to have control."

Grandmother testified that when Mother started relapsing, Grandparents asked Mother to go to Sober Living, and she agreed. Grandmother testified that she and her husband agreed to support Mother in her recovery by taking care of Heather. Grandmother said that several family meetings were held and that Mother and Father agreed that Heather would stay with Grandparents.

Grandmother testified that she and her husband were in charge of Heather's daily activities[7] but said that she tried to keep Mother informed about Heather's activities and tried to involve Mother and Father in those decisions. Grandmother testified that she kept Mother fully informed of everything going on with Heather and that both Mother and Father gave input on how to care for

---

[7]Grandmother testified that Heather had a babysitter during the day while they worked.

Heather. Grandmother agreed that Mother made doctor appointments for Heather's fifteen-month and eighteen-month well-care checkups; when Grandmother needed to take Heather to the doctor, she did not make appointments but instead took Heather to urgent care.

Grandmother agreed that Mother saw Heather while Grandmother cared for Heather from March until October 2014. Grandmother testified that Father's visits with Heather were sporadic until the end of May or the beginning of June 2014 when they worked out a deal for him to visit with Heather every other weekend. But Grandmother said that Father has been in Heather's life since her birth and that he sees her on a regular basis. According to Grandmother, Father never kept Heather for more than a four-day period, never exercised his right to summer visitation, never asked for Heather to live with him, and never filed any document with a court requesting to be named Heather's primary conservator. Grandmother also testified that Mother never talked to her about having Heather live with Father.

Father testified that between March and October 2014, he asked Grandparents on three occasions for Heather to come and live with him; Grandmother's response was always, "[W]e'll talk about it," but then "it never gets talked about." Father said that before Mother went to rehab, he told Grandparents that Heather should live with him; that a two-week-long discussion ensued via text messages, phone calls, and in-person conversations; and that he

6

and Mother ultimately agreed to let Heather live with Grandparents while Mother was in treatment.

Father testified that he has always had a close relationship with Heather and that since she was born, the longest he had gone without seeing her was four days when he was on vacation. He testified that he saw Heather more than every other weekend; he explained that he sometimes saw her two weekends in a row and that many times, he picked her up on Thursdays. Father said that he did not exercise his summer visitation because he was not aware he had it; he did not look at the ordered possession schedule because Mother had always allowed him to see Heather whenever he wanted. Father said that he did not initiate court proceedings because he thought that everything would go back to normal after Mother got out of treatment; he said that he had even discussed getting his own place with Mother and Heather.

Father agreed that Grandparents were Heather's primary caregivers from March 30 to December 19 when he took possession of Heather. He said that Grandparents kept him reasonably informed about what was going on with Heather. Father testified that because Heather was staying with Grandparents, he gave them a medical authorization to allow them to seek treatment for Heather for "any type of emergency reasons." On more than one occasion, a healthcare provider contacted Father for authorization to provide healthcare for Heather.

At the conclusion of the hearing before the trial court on Father's plea to the jurisdiction, the trial court found that based on the parties' agreement—that Heather would live temporarily with Grandparents until Mother returned from treatment—Grandparents had failed to establish that they had actual care and actual control over Heather for the statutorily-required six months; thus, Grandparents failed to establish standing to pursue a suit affecting the parent-child relationship (SAPCR). The trial court granted Father's plea to the jurisdiction and dismissed Grandparents' suit.[8]

Grandparents perfected this appeal, raising a single issue asserting that the trial court erred by determining that they lacked standing under Texas Family Code section 102.003(a)(9) to file a SAPCR concerning Heather. *See* Tex. Fam. Code Ann. § 102.003(a)(9).

### III. STANDARD OF REVIEW AND STANDING UNDER SECTION 102.003(A)(9)

Whether a plaintiff has standing is a question of law that we review de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *In re Kelso*, 266 S.W.3d 586, 590 (Tex. App.—Fort Worth 2008, orig. proceeding). When standing is conferred by a statute, "the statute itself serves as the proper framework for a standing analysis." *Everett v. TK-Taito, L.L.C.*,

---

[8]Based on Father's counterpetition to modify the parent-child relationship, the trial court signed an order agreed to by Mother that appointed Mother and Father joint managing conservators, gave Father the exclusive right to designate Heather's primary residence, gave Mother possession of Heather at times mutually agreed to in advance by Father and Mother, and ordered Mother to pay child support and to apply for insurance for Heather.

178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.). We review a trial court's construction of a statute, including a statute conferring standing, de novo. *See, e.g., Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

The Texas Legislature has provided a comprehensive statutory framework for standing in the context of SAPCRs. *See In re K.K.C.*, 292 S.W.3d 788, 790–91 (Tex. App.—Beaumont 2009, orig. proceeding); *see* Tex. Fam. Code Ann. § 102.003, §§ 102.0035, .004 (West 2014), § 102.0045 (West Supp. 2015), § 102.006 (West 2014). In an original SAPCR, standing is a threshold issue when the petitioner seeks managing conservatorship. *K.K.C.*, 292 S.W.3d at 790. The burden to prove standing is on the petitioner. *See id.*

Texas Family Code section 102.003(a)(9) confers general standing to file suit upon "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *See* Tex. Fam. Code Ann. § 102.003(a)(9). The word "control" in section 102.003(a)(9) means "something more than the control implicit in having care and possession of the child." *See K.K.C.*, 292 S.W.3d at 792. "Control" refers to the power or authority to guide and manage and includes the authority to make decisions of legal significance for the child. *Id.* at 793. To compute the six-month time period under section 102.003(a)(9), "the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant

9

time preceding the date of commencement of the suit." Tex. Fam. Code Ann. § 102.003(b). A determination of standing under family code section 102.003(a)(9) is necessarily fact specific and is resolved on an ad hoc basis. *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex. App.—Dallas 2008, no pet.).

## IV. ANALYSIS

Looking to the statutory elements of standing under family code section 102.003(a)(9), Grandparents had the burden of establishing that they were not foster parents of Heather and that they had actual care, control, and possession of Heather for at least six months ending not more than ninety days before October 4, 2014—the date Grandparents filed suit seeking managing conservatorship of Heather. *See* Tex. Fam. Code Ann. § 102.003(a)(9). Grandparents established that they were not Heather's foster parents, and the parties agree—and the trial court found—that Heather primarily resided with Grandparents at Grandparents' home from March through October 2014. Thus, Grandparents established the not-foster-parents element of section 102.003(a)(9) and that Heather physically resided with Grandparents for at least six months before they filed their SAPCR.[9]

---

[9]Mother and Father contend that the fact that Heather physically resided with Grandparents at Grandparents' home for six months does not establish the six-month "actual possession" time period required by section 102.003(a)(9) because—according to Mother and Father—Grandparents' home was only a temporary residence for Heather. *See* Tex. Fam. Code Ann. § 102.003(b); *Kelso*, 266 S.W.3d at 590 (stating that one of the factors courts look at to determine a child's principal residence is whether the residence is permanent rather than temporary). However, we need not address whether Grandparents'

Concerning the actual care and actual control elements of section 102.003(a)(9), however, in conclusions of law 1 and 2, respectively, the trial court determined that Grandparents had failed to establish that they had actual care over Heather for the statutory six-month period and had failed to establish that they had actual control over Heather for the statutory six-month period. In their sole issue, Grandparents raise two primary complaints challenging these conclusions of law. First, Grandparents complain that the trial court "engrafted" a "not temporary" element on section 102.003(a)(9)'s standing requirements; Grandparents argue that their actual care and actual control over Heather can be temporary and still meet section 102.003(a)(9)'s standing requirements. Second, Grandparents argue that proof of shared custody may meet section 102.003(a)(9)'s actual care and actual control requirements even in the absence of evidence of the legal right of control. We address these contentions together.

Section 102.003(a)(9)'s requirement that a nonparent establish "actual care and control" of the child in order to gain standing to file an original SAPCR implicitly raises the issue of whether the parents are adequately caring for the child or have abdicated their parental duties of care for and control of the child. *See, e.g.*, *In re C.T.H.S.*, 311 S.W.3d 204, 209 (Tex. App.—Beaumont 2010, pet.

six months of physical possession of Heather satisfied section 102.003(a)(9)'s actual possession requirement because, as set forth below, we hold that the trial court's conclusions of law—that Grandparents failed to establish the actual care and actual control elements—are correct. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to disposition of appeal).

11

denied) (recognizing that "when someone other than a parent claims standing under the 'actual care' requirement of section 102.003(a)(9), the court considers whether the parent is adequately caring for her children"). The issue of whether the parents are adequately caring for the child or have abdicated their parental duties of care for and control of the child is necessarily and implicitly raised by an assertion of section 102.003(a)(9) standing because so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. *See Troxel v. Granville*, 530 U.S. 57, 68–69, 120 S. Ct. 2054, 2061 (2000). The interest of parents in the care, custody, and control of their children is a fundamental liberty interest as recognized by the United States Supreme Court in *Troxel*[10] and is of constitutional dimension as recognized repeatedly by the Texas Supreme Court.[11] Texas statutes are intended by the Texas Legislature to be in compliance with the United States and Texas Constitutions. *See K.K.C.*, 292 S.W.3d at 792–93. Accordingly, standing under section 102.003(a)(9) cannot be gained by a nonparent exercising care, control, and possession over a child in the absence of evidence that the child's parent is unfit or has abdicated his or her own care, control, and possession over

---

[10]*Id.*, 120 S. Ct. at 2061.

[11]*See, e.g.*, *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976).

12

the child to the nonparent for the statutory period. *See id.* (holding no section 102.003(a)(9) standing existed for nonparent because parent "did not relinquish to petitioner or abdicate her parental rights, duties, and responsibilities" to nonparent); *Kelso*, 266 S.W.3d at 590–91 (holding no section 102.003(a)(9) standing existed for grandmother and step-grandfather when "the evidence does not show that [mother] voluntarily relinquished permanent care, control, and possession of [child]"); *In re M.J.G.*, 248 S.W.3d 753, 758–59 (Tex. App.—Fort Worth 2008, no pet.) (holding no section 102.003(a)(9) standing existed for grandparents when "there was no evidence . . . [parents] had abdicated their parental duties and responsibilities to the grandparents"). By the use of the word "actual," section 102.003(a)(9)'s requirement of "*actual* care, control, and possession" incorporates into the statute a requirement of care, control, and possession of the child that is equivalent to the exercise of parental rights. *See Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 532 (Tex. App.—Austin 2011, no pet.) (recognizing that, by requiring showing of actual control, the Texas Legislature in section 102.003(a)(9) created standing for those in fact exercising care, control, and possession analogous to the exercise of parental rights). Consequently, when a fit parent is exercising his or her own parental rights and has not abdicated his or her parental rights of care, control, and possession to the nonparent for the requisite statutory period, the nonparent lacks standing under section 102.003(a)(9) to file a SAPCR. *See, e.g.*, *Troxel*,

13

530 U.S. at 68–69, 71, 120 S. Ct. at 2061–62; *K.K.C.*, 292 S.W.3d at 792–93; *Kelso*, 266 S.W.3d at 590–91; *M.J.G.*, 248 S.W.3d at 758–59.

Grandparents' arguments here—that the trial court erroneously engrafted a "not temporary" element into section 102.003(a)(9)'s standing requirements and that proof of shared custody may meet section 102.003(a)(9)'s actual care and actual control requirements even in the absence of evidence of the legal right of control—both fail because they are premised upon the concept that a nonparent may gain standing under section 102.003(a)(9) at the same time a fit parent is appropriately exercising his or her own parental rights. The concept that a nonparent may gain standing under section 102.003(a)(9) while a fit parent is appropriately exercising his or her own parental rights—i.e., has not abdicated those parental rights to the nonparent—is contrary to the United States Supreme Court's analysis in *Troxel*, as well as numerous Texas cases. *See, e.g.*, *Troxel*, 530 U.S. at 68–69, 120 S. Ct. at 2061; *K.K.C.*, 292 S.W.3d at 792–93; *Kelso*, 266 S.W.3d at 590–91; *M.J.G.*, 248 S.W.3d at 758–59.

Here, no evidence exists that Mother or Father are not fit parents. The trial court's findings of fact, as well as the evidence presented on Father's plea to the jurisdiction, established that throughout Heather's stay at Grandparents' home, Father and Mother continued to exercise their parental rights concerning Heather. Mother and Father jointly agreed to allow Heather to stay with Grandparents for a limited period of time—until Mother completed rehab. Mother continued to care for Heather, visiting Heather at Grandparents' home in the

14

evenings, bathing her, reading to her, and putting her to bed. Mother continued to make scheduled doctor's appointments for Heather; Grandparents obtained a medical authorization from Mother and Father for Heather's acute care needs. Father saw Heather at least every other weekend and testified that during Heather's life, the longest period of time he had gone without seeing her was four days. Physicians called Father to obtain his consent to treat Heather when Grandparents took her for non-acute medical care.

Because no evidence exists that Mother and Father are not fit parents and because the evidence supports the trial court's findings of fact that Mother and Father continued to exercise their parental rights of care and control concerning Heather and did not abdicate those rights to Grandparents, the trial court correctly determined in conclusions of law 1 and 2 that Grandparents had failed to establish that they had actual care over Heather for the statutory six-month period and failed to establish that they had actual control over Heather for the statutory six-month period. Because the trial court did not err in its application of the law to the facts, we hold that the trial court did not err by granting Father's plea to the jurisdiction challenging Grandparents' standing under section 102.003(a)(9) to file a SAPCR seeking managing conservatorship of Heather. *See Kelso*, 266 S.W.3d at 591; *M.J.G.*, 248 S.W.3d at 759. We overrule Grandparents' sole issue.

15

## V. CONCLUSION

Having overruled Grandparents' sole issue, we affirm the trial court's order granting Father's plea to the jurisdiction and dismissing Grandparents' SAPCR for lack of standing under Texas Family Code section 102.003(a)(9).

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and SUDDERTH, JJ.

DELIVERED:  July 28, 2016